STEPHEN R. HARRIS, ESQ.
Nevada Bar No. 001463
CHRIS D. NICHOLS, ESQ.
Nevada Bar No. 003123
BELDING, HARRIS & PETRONI, LTD.
417 West Plumb Lane
Reno, Nevada 89509
Telephone: (775) 786-7600
Facsimile: (775) 786-7764

Proposed Attorney for Debtor and
Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

* * * * *

IN RE:

SKYE INTERNATIONAL, INC.
a Nevada corporation,

Debtor.
_______________________________/

Case No. 09-54485

(Chapter 11)

**APPLICATION FOR ORDER AUTHORIZING DEBTOR TO EMPLOY ATTORNEY UNDER A GENERAL RETAINER [BELDING, HARRIS & PETRONI, LTD.] AND TO ENTER INTO MONTHLY BILLING ARRANGEMENT UNDER 11 U.S.C. §§105(a) AND 331**

Hrg. DATE: 12-21-09
Hrg. TIME: 11:00 a.m.
Est Time: 10 mins
Set by: Pursuant to Pending Ex Parte Motion for Order to Hear First Day Motions on Shortened Time

***TO: The Honorable Gregg W. Zive, United States Bankruptcy Judge***

COMES NOW, SKYE INTERNATIONAL, INC., a Nevada corporation, Debtor and Debtor-in-possession herein ("Debtor") by and through its attorneys STEPHEN R. HARRIS, ESQ., and CHRIS D. NICHOLS, ESQ., of BELDING, HARRIS & PETRONI, LTD., and files its APPLICATION FOR ORDER AUTHORIZING DEBTORS TO EMPLOY ATTORNEYS UNDER A GENERAL RETAINER [BELDING, HARRIS & PETRONI, LTD.] AND TO ENTER INTO MONTHLY BILLING ARRANGEMENT



LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

UNDER 11 U.S.C. §§105(a) AND 331, and states and alleges as follows:

1. On December 16, 2009, Debtor filed its Voluntary Petition for Relief under Chapter 11 of the United States Bankruptcy Code. The Debtor is in the business of designing, manufacturing and selling tankless water heater systems.

2. No trustee has been appointed and Debtor acts as Debtor-in-Possession herein. Debtor is not sufficiently familiar with the rights and duties of Debtor-in-Possession as to be able to plan and conduct proceedings without the aid of competent counsel. Specifically, the retention of attorneys is necessary in connection with the following matters:

(a) the examination of preparation of records and reports as required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules;

(b) the preparations of applications and proposed orders to be submitted to the Court;

(c) the identification and prosecution of claims and causes of action assertable by Applicant on behalf of the estate herein;

(d) the examination of proofs of claim anticipated to be filed herein and the possible prosecution of objections to certain of such claims;

(e) advising the Debtors and preparing documents in connection with the contemplated ongoing operation of the Debtors' business, if any;

(f) assisting and advising the Debtors in performing other official functions as set forth in Section 521, et seq., of the Bankruptcy Code; and

(g) advising and preparing a Plan of Reorganization, Disclosure Statement, and related documents, and confirmation of said Plan, as provided in Section 1101, et seq., of the Bankruptcy Code.

3. The Debtor has conferred with, and now desires to retain and employ, STEPHEN R. HARRIS, ESQ., and CHRIS D. NICHOLS, ESQ., and their law firm of BELDING, HARRIS & PETRONI, LTD., as its local attorneys under a general retainer to perform all the above-described services necessary and desirable in the administration and reorganization of this estate.

4. The Debtor has selected as its attorneys STEPHEN R. HARRIS, ESQ.,

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

and CHRIS D. NICHOLS, ESQ., and their law firm of BELDING, HARRIS & PETRONI, LTD. because of the extensive experience and knowledge of the firm's members in the field of bankruptcy, reorganization, and Debtor's and creditors' rights. Accordingly, the Debtor believes that these attorneys are well qualified to represent it in this Chapter 11 reorganization case.

5. A general retainer is necessary because of the extensive legal services required for this estate. Accordingly, Movant has paid the Law Firm the sum of Thirty Thousand Dollars ($30,000.00), on November 17, 2009, as a general retainer to its trust account, which sum has been applied to pre-bankruptcy petition filing, planning and bankruptcy petition and related initial motions legal fees and costs incurred by the Debtor. Further, Debtor has agreed to pay an additional sum of Thirty Thousand Dollars ($30,000.00) upon Interim DIP Loan approval. The Law Firm shall be paid for its actual time charges and disbursements, subject to approval by the Court. Debtor has agreed that BELDING, HARRIS & PETRONI, LTD., shall be compensated for services at the following rates: Stephen R. Harris, Esq.- $400.00 per hour; Gloria M. Petroni, Esq. - $375.00 per hour; Chris D. Nichols, Esq., $350.00 per hour; and paraprofessional services - $175 to $195 per hour, depending on each paraprofessional's experience. These hourly rates are subject to periodic adjustments to reflect economic and other conditions, and on occasion, to reflect each attorney's or paraprofessional's increased experience and expertise in the area of bankruptcy law. This basis of compensation is expressly authorized pursuant to Sections 328(a) and 331 of the Bankruptcy Code.

6. STEPHEN R. HARRIS, ESQ., and CHRIS D. NICHOLS, ESQ., and their law firm of BELDING, HARRIS & PETRONI, LTD., has indicated their willingness to act on the Debtor's behalf and to be compensated in accordance with the terms and conditions set forth in Paragraph 5 herein, and as set forth in the parties' retainer agreement attached hereto and incorporated herein as **Exhibit "A"**.

7. To the best of Movant's knowledge, STEPHEN R. HARRIS, ESQ., CHRIS

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

D. NICHOLS, ESQ., and the members and associates of the firm of BELDING, HARRIS & PETRONI, LTD. do not have any connection with the Debtor, their creditors or any other party in interest, or their respective attorneys or accountants, the United States Trustee, or any person in the office of the United States Trustee. STEPHEN R. HARRIS, ESQ., CHRIS D. NICHOLS, ESQ., and their law firm represent no interest adverse to the estate in matters upon which it is to be retained.

8. The Debtor is also seeking the establishment of procedures for compensating and reimbursing the Debtor's general bankruptcy attorneys on a monthly basis in order to permit the Court and other parties to more effectively monitor the professional fees incurred in this Chapter 11 case. The requested procedures would permit STEPHEN R. HARRIS, ESQ., and CHRIS D. NICHOLS, ES., and his law firm BELDING, HARRIS & PETRONI, LTD., to file with the Court an application (the "Fee Notice") for interim approval and allowance of compensation for services rendered and expenses incurred by the Law Firm during the immediately preceding month (the "Compensation Period") and to serve such Fee Notice on the Debtor, the United States Trustee, counsel to the Debtor's pre-petition and post-petition secured lenders (the "Lenders"), and counsel to any statutory committee(s) appointed by the United States Trustee (collectively, the "Committee(s)"). The Debtor proposes that the monthly payment of compensation and reimbursement of expenses of the Law Firm be structured as follows:

(a) On or before the 20th day of each month following the month for which compensation is sought (the "Monthly Fee Notice Date"), the Law Firm will file with the Court a Monthly Fee Notice and serve the Fee Notice on the following parties (collectively, the "Notice Parties"): (I) Debtor; (ii) counsel for the pre-petition and post-petition Lenders; (iii) counsel to the Committee(s); and (iv) the United States Trustee, 300 Booth Street, Suite 2129, Reno, Nevada 89509, Attn: Nicholas A. Strozza, Esq.

(b) Each Notice Party will have ten (10) days after service of a Fee Notice to object thereto (the "Objection Deadline"). Upon the expiration of the Objection Deadline, the Debtor is authorized to pay the Law Firm an amount (the "Actual Interim Payment") equal to the lesser of (I) eighty percent (80%) of the fees and one hundred percent (100%) of the expenses requested in the Fee Notice with the total fees and costs paid not to exceed $20,000 in any given



LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

month (the "Maximum Interim Payment") and (ii) eighty percent (80%) of the fees and one hundred percent (100%) of the expenses not subject to an objection pursuant to subparagraph (c) below. Calculated as of December 15, 2009, credit shall be given to the Debtor for any attorney's fees and costs paid out of the advance retainers on deposit with the Law Firm, and said credits shall be reflected on the monthly billing statements.

(c) If any Notice Party objects to the Law Firm's Fee Notice, it must file with the Court and serve on the Law Firm and each of the Notice Parties a written objection, which must be filed with the Court and received by the Law Firm and the Notice Parties on or before the Objection Deadline. Thereafter, the objecting party and the Law Firm may attempt to resolve the Objection on a consensual basis. If the parties are unable to reach a resolution of the Objection within twenty (20) days after service of the Objection, the Law Firm may either: (I) file the Objection with the Court, together with a request for payment of the difference, if any, between the Maximum Interim Payment and the Actual Interim Payment made to the Law Firm (the "Incremental Amount"); or (ii) forego payment of the Incremental Amount until the next interim or final fee application hearing, at which time the Court will consider and dispose of the Objection if requested by the parties.

9. Beginning with period ending March 31, 2010, and at subsequent four-month intervals or at such other intervals convenient to the Court, the Law Firm must file with the Court and serve on the Notice Parties a request (an "Interim Fee Application Request") for interim Court approval and allowance, pursuant to §331 of the Bankruptcy Code, of the compensation and reimbursement of expenses sought in the Fee Notices filed during such period (the "Interim Fee Period"). The Interim Fee Application Request must include a summary of the Fee Notices that are the subject of the request and any other information requested by the Court or required by the Local Rules. The Law Firm must file its Interim Fee Application Request within forty-five (45) days after the end of the Interim Fee Period for which the request seeks allowance of fees and reimbursement of expenses. The Law Firm must file its first Interim Fee Application Request on or before May 1, 2010, and the first Interim Fee Application Request should cover the Interim Fee Period from the Filing Date through and including March 31, 2010. If the Law Firm fails to file an Interim Fee Application Request when due, it will be ineligible to receive further interim payments of fees or expenses under the Revised Compensation Procedures until such time as a further Interim Fee Application Request is submitted by the Law Firm.

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

10. The Debtor shall request that the Court schedule a hearing on the Interim Fee Application Request(s) at least once every four months, or at such other intervals as the Court deems appropriate. Upon allowance by the Court of the Law Firm's Interim Fee Application Request, the Debtor shall be authorized to promptly pay the Law Firm the difference, if any, between the allowed amount of fees and expenses approved by the Court and the Actual Interim Payments received.

11. The pendency of an Objection to payment of compensation or reimbursement of expenses will not disqualify the Law Firm from the future payment of compensation or reimbursement of expenses under the Revised Compensation Procedures. Neither (I) the payment of or the failure to pay, in whole or in part, monthly interim compensation and reimbursement of expenses under the Revised Compensation Procedures nor (ii) the filing of or failure to file an Objection will bind any party in interest or the Court with respect to the allowance of interim or final applications for compensation and reimbursement of expenses of the Law Firm. All fees and expenses paid to the Law Firm under these compensation procedures are subject to disgorgement until final allowance by the Court.

12. 11 U.S.C. §331 of the Bankruptcy Court provides, in part as follows:

> A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title...

11 U.S.C. §105(a) provides in part as follows:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title...shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules...

13. Courts in this district and elsewhere have approved similar procedures for compensating and reimbursing court-approved professionals in other large Chapter 11

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

cases. See In re Washington Group International, Case No. 00-31627 (GWZ) (Bankr. D. Nev. May 14, 2001; In re Fitzgeralds Gaming Corp., Case No. 00-33467 (GWZ) (Bankr. D. Nev. Feb. 12, 2001); In re ICG Communications, Case No. 00-4238 (PJW) (Bankr. D. Del. June 13, 2000). Such procedures are needed to avoid having professionals fund the reorganization case. In re International Horizons, Inc., 10 B.R. 895, 897 (Bankr. N.D. Ga. 1981) (Court established procedures for monthly interim compensations). The United States Bankruptcy Appellate Panel for the Ninth Circuit ("BAP") made clear that interim payments for professionals on a monthly basis are entirely appropriate in large cases such as the Debtor's case. United States Trustee v. Knudsen Corp. (In re Knudsen Corp.), 84 B.R. 668 (9th Cir. 1988). In Knudsen, the court held that at least in large cases, monthly payments to professionals are appropriate so long as made pursuant to a procedure that provides the opportunity for review by the Court. Knudsen, 84 F.R. at 671-72.

14. In re California Consortium, 135 B.R. 120, 123 (Bankr. C.D. Cal. 1991) the court held that "the essential purpose of this action is to relieve counsel and other professionals of the burden of financing lengthy proceedings." The interim fee procedure outlined in this Motion alleviates the financial burden on the Debtor's general bankruptcy attorneys, complies with requirements of §331 and accords the procedure that the BAP found "would undoubtedly be appropriate." Knudsen, 84 B.R. at 527.

**WHEREFORE,** Debtor requests the entry of an order: 1) authorizing it to employ and retain STEPHEN R. HARRIS, ESQ., and CHRIS D. NICHOLS and the law firm of BELDING, HARRIS & PETRONI, LTD., pursuant to the terms and conditions recited above, to represent its in this Chapter 11 case; 2) authorizing it to pay the law firm of

///

///

///

///

///

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

BELDING, HARRIS & PETRONI, LTD. on a monthly basis according to the terms and conditions set forth hereinabove; and 3) for such other and further relief as the Court deems just under the circumstances.

DATED this 15th day of December, 2009.

SKYE INTERNATIONAL, INC.
A Nevada corporation

By [signature]
GREGG C. JOHNSON, Executive Vice-President and Authorized Representative

LAW OFFICES OF
BELDING, HARRIS & PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO, NEVADA 89509
(775) 786-7600

# EXHIBIT "A"

EXHIBIT "A"

BELDING, HARRIS & PETRONI, LTD.
ATTORNEYS AND COUNSELORS AT LAW
417 WEST PLUMB LANE
RENO, NEVADA 89509
(775) 786-7600
FAX (775) 786-7764
FAX (775) 786-1633

STEPHEN R. HARRIS
GLORIA M. PETRONI
CHRIS D. NICHOLS
JAMES D. VITALE

DANIEL J. RIVIERA
OF COUNSEL
LICENSED IN WASHINGTON AND IDAHO

November 13, 2009

SKYE INTERNATIONAL, INC.
Attn: Ted Marek, Secretary - Treasurer and Director
7701 E. Gray Road, Suite 4
Scottsdale, AZ 85260

Re: **SKYE INTERNATION, INC. - Chapter 11 Reorganization Proceeding**

Dear Mr. Marek:

In your capacity as Director of SKYE INTERNATIONAL, INC., a Nevada corporation, you have requested that STEPHEN R. HARRIS, ESQ., of BELDING, HARRIS & PETRONI, LTD., represent SKYE INTERNATIONAL, INC., in a Chapter 11 reorganization proceeding which will be filed in the United States Bankruptcy Court for the District of Nevada (Reno, Nevada). Pursuant to your request, this letter is to set forth the nature of our compensation, the scope of our legal representation, to describe to you our law firm's billing practices, and those things which will need to be done in the Chapter 11 context.

Specifically, the legal services already rendered and to be rendered by this law firm are as follows:

1. Preparation and filing of Chapter 11 petition, lists of secured and unsecured creditors, and mailing matrix;

2. Preparation and filing of schedules and statement of financial affairs;

3. Attendance at and responsibility for hearings, pretrial conferences, and trials arising from the bankruptcy filing (specifically, excluding any representation in state court and federal court actions, unless previously agreed) or any litigation arising in connection therewith;

4. Preparation, filing and presentation to the Bankruptcy Court of any pleading(s) necessary to protect the legal interests of SKYE INTERNATIONAL, INC., including but not limited to, sales of real and


T.M.

personal property, injunctive relief requests under §105 and any appropriate adversary actions;

5. Preparation, filing and presentation to the Bankruptcy Court of a disclosure statement and plan of reorganization under Chapter 11 of Title 11 of the United States Code;

6. Review of all claims made by creditors and interested parties, and of any objections to claims which are disputed; and

7. Preparation and presentation of a report of implementation of Plan and request for final decree closing the Chapter 11 case.

Additionally, we request that by executing the enclosed copy of this letter, you empower our law firm to take all steps in your case deemed by us to be advisable, including any steps needed to effect any compromise which may be in the best interests of the estate and to institute such legal proceedings as may be in your best interests.

In consideration of our rendering these legal services, you shall tender to this firm an advance retainer of Sixty Thousand and no/100 Dollars ($60,000.00), $30,000.00 payable before filing the Chapter 11 Voluntary Petition and $30,000.00 payable within five (5) days after receiving approval for interim Debtor-in-Possession financing. For your information, legal services rendered on behalf of SKYE INTERNATIONAL, INC. will be billed and charged against the retainer at an hourly rate of $400.00 for Stephen R. Harris, Esq., $350.00 per hour for Chris D. Nichols, Esq., $375.00 per hour for Gloria M. Petroni, Esq., and $195 per hour for paraprofessional services, depending on each paraprofessional's experience, plus reimbursement of necessary costs and out-of-pocket expenses, such as photocopy costs, court filing fees, process server fees, telephone charges, mail charges, for computerized legal research, telecopying, and overnight courier services. After depletion of the retainer, SKYE INTERNATIONAL, INC. has agreed to compensate STEPHEN R. HARRIS, ESQ., of the law firm BELDING, HARRIS & PETRONI, LTD., on an hourly basis at the rates customarily charged by attorneys and legal assistants who render professional services on behalf of BELDING, HARRIS & PETRONI, LTD.

You agree to deposit with the law firm's general account the sum of Thirty Thousand and no/100 Dollars ($30,000.00) as an advance retainer for said legal services and costs. You also agree to pay an another Thirty Thousand and no/100 Dollars ($30,000.00) as an additional retainer due


TM

after U.S. Bankruptcy Court approval for a debtor-in-possession loan. I estimate that the total legal fees and costs incurred by the firm in this bankruptcy reorganization case to be $60.000.00 to $100,000.00, or more, depending on the complexity of the legal issues and the problems encountered, which legal fees and costs are to be billed to SKYE INTERNATIONAL, INC.

Application for approval of fees and costs will need to be made to the Bankruptcy Court periodically, and we will also need to disclose our fee agreement to the Bankruptcy Court by the filing of a Disclosure Statement of Compensation under Federal Rule of Bankruptcy Procedure 2016(b).

In the course of providing legal services on behalf of the corporation, I am sure you realize that we must rely on your representations and statements as to facts and circumstances within your knowledge and the correctness of any and all documents delivered to the firm by you or your agents. Also, please know that we will utilize our best efforts in representing you.

You, or BELDING, HARRIS & PETRONI, LTD. may, of course, terminate the employment of the law firm at any time. Upon such termination, the firm will charge against and pay from the retainer its unpaid fees and expenses and refund the remainder of the retainer, if any, to you. Additionally, we reserve the right to withdraw from representation of a client where our fees and expenses are not paid in the normal course. We generally do not prepare a periodic statement of account, only monthly accounts. If you ever have any questions whatsoever regarding any aspect of your monthly bill, please call.

Our charges are not contingent upon the successful conclusion, but are charged without regard to the outcome. Accordingly, we will look solely to you for payment, and our charges will not be dependent or contingent upon payment by any other party.

The filing fee for a Chapter 11 Reorganization Petition is currently $1,039.00 and will be paid at the time the petition is filed.

This letter is to memorialize some of what we have recently discussed, as well as those things that will need to be performed in a Chapter 11 proceeding. The following is a listing of those items required by the Court to be filed to commence a Chapter 11 case.

1. With respect to the voluntary petition which I have prepared and will be filing, a


TM

certified copy should be filed in Washoe County, State of Nevada. Additionally, I would suggest that we deliver a copy of the voluntary petition to any title company which is currently scheduled to conduct any pending foreclosure action(s), if any.

2. We must file an alphabetical list of creditors, which includes unsecured as well as secured creditors.

3. From the list of creditors, we must file what is commonly referred to as a mailing matrix or mailing list, which is a mailing label list of creditors who are to receive notice of the bankruptcy petition filing and who will receive from the Bankruptcy Court a notice of hearing of a first meeting of creditors held in accordance with 11 U.S.C.§341.

4. Finally, we will prepare and file an alphabetical list of the 20 largest unsecured creditors, excluding insiders, which the Bankruptcy Court will use to solicit participants for a committee of unsecured creditors. You will pay for attorneys' fees and costs incurred by the duly appointed attorney for the Unsecured Creditors' Committee, after notice and a hearing on a request to be paid.

Within fifteen (15) days following the filing of the petition, the Debtor is required to file with the Court, a Statement of Financial Affairs and Schedule of Assets and Liabilities. (See discussion below.) Also, it will be necessary to open new bank accounts reflecting that the maker of the checks is a debtor-in-possession. Alternatively, it is permissible to keep your existing account(s), on condition that we provide the U.S. Trustee with a bank statement that shows an ending balance as of the date of the filing of the bankruptcy petition and a copy of the bank signature card indicating "Debtor-in-Possession." There should be a bank employee in the new accounts department who is familiar with this type of arrangement and should be able to help you.

In addition to the Schedules and Statements, there is a monthly operating report required to be filed with the Bankruptcy Court which will generally reflect the receipts and disbursements of the debtor-in-possession. It is my suggestion that the first monthly operating report be filed no later than the 20th day of the month. I would also request, rather than waiting until the 20th day of each month, that we make an attempt to submit the monthly operating reports no later than the 5th day of each month. In connection with this monthly accounting information, let me reiterate that it is extremely important that proper accounting controls and proper accounting records be maintained and prepared. Lack of proper accounting for receipts received during the pendency of the bankruptcy

T.M

would be a prime reason for a creditor to request the appointment of a trustee and removal of the debtor-in-possession. I am sure you can understand that this is not something with which we need to contend.

One of the items necessary to be filed with the Bankruptcy Court in the early days is a copy of the insurance policy which covers the property(s) in question. Additionally, it is extremely important during the pendency of the bankruptcy that all taxes be maintained current, i.e., payroll taxes and any income taxes owed to the Internal Revenue Service. This includes any payments required by the State of Nevada. It is not critical that the property taxes be maintained current, although to the extent that they are not paid they become a priority lien against the property.

## THE SCHEDULES

There are certain documents to be filed within fifteen (15) days of the filing of the bankruptcy. These are generally known as "the schedules" and consist of the Schedule of Assets and Liabilities and Statement of Financial Affairs. The Schedules must be filed with the Bankruptcy Court fifteen (15) days after the petition is filed. Failure to file schedules by the deadline will result in the case being dismissed by the Court without notice. If the case is dismissed for failure to file Schedules, it may not be possible to re-file for 6 months.

If you believe that you will encounter substantial difficulties in completing the Chapter 11 Schedules, contact me immediately. In order for us to complete the Schedules, it is essential that they be received five (5) days prior to the deadline for filing the Schedules with the Court, since we must edit, type and proofread them. I realize that accurately completing the Schedules will be a burdensome task. It is, however, essential that the Schedules be filed by the deadline. Bankruptcy is a privilege, not a right, and accurately completing and filing the Schedules by the filing deadline is one of the prices you have to pay for that privilege.

## THE MONTHLY REPORT AND HIRING OF PROFESSIONALS

I have enclosed for you a copy of the monthly report form which is required by the Bankruptcy Court. If you believe after inspection of the monthly report form that you will be able to generate it yourself, please let me know. If you believe that it will be necessary to hire an accountant to take care of this for you, please let me know so I can apply to the Court for authorization to hire such an accountant. The application for authorization to hire and pay an accountant is similar to that needed to retain an attorney. Please do not hire or pay an accountant for


TM

either pre- or post-petition work until I obtain Court authorization. In addition, as we have discussed, do not pay any estate funds to this firm or any other law firm or professional after the bankruptcy filing without prior Court authorization, unless payments are made to that professional's trust account and disbursed to the general account after receiving Court approval to make said transfer(s).

THE THREE ACCOUNTS

You will be required to open three separate bank accounts, assuming you are engaged in a business that has employees:

(a) a general account in which all cash receipts shall be deposited; withdrawals from this account shall require the signature of an authorized officer;

(b) the payroll account, into which funds will be transferred from the general account; withdrawals from this account shall require the signature of an authorized officer; and

(c) in addition, you will need to open a tax account, into which funds shall be transferred from the general account; withdrawals from this account shall also require the signature of an authorized officer.

It will be necessary to deposit in the tax account all withholding, social security, unemployment, excise, sales, use or other taxes collected or received, withheld, for or on behalf of the United States, State of Nevada, State of California, or any political subdivision thereof.

Unfortunately, the requirement of three accounts is one which is seldom waived. Since it may be necessary to have some flexibility, and since we may need a favor from the Court in the future, I would rather not "go back to the well" too often on a matter which is not absolutely critical to the administration of the estate. [If you are not engaged in a business that has employees, then maintaining one (1) "debtor-in-possession" general bank account will be satisfactory with the Court.]

UTILITIES

Your utility companies, upon receiving notification of the Chapter 11 case, will "close out"

TM
TM

your accounts. If at all possible, the utilities should be current when the case is filed. The utility companies are not able to shut off service to you for non-payment of pre-petition accounts. However, they are able to demand a deposit for continuation of service to you if you are delinquent upon filing.

Pursuant to 11 U.S.C. §366(b), if you are not able to reach an agreement with the utilities within twenty (20) days after the date of filing, they may attempt to shut off service unless you pay the unreasonable high deposit which they may demand.

Pursuant to that same statute, however, we can petition the Court for a reduction in the size of the deposit which will be demanded by the utility service. It has been my experience that I can sometimes negotiate a reduced deposit or deposit terms which can be lived with.

## ORDINARY COURSE OF BUSINESS TRANSACTIONS

A debtor-in-possession is no longer required to obtain authorization from the Court to continue operating the business. It is presumed that the ordinary Chapter 11 case will involve a debtor-in-possession who is operating a business which existed pre-petition. However, for any new, major or serious business transactions, which are even arguably outside the ordinary course of business, it will be necessary to obtain prior authorization of the Bankruptcy Court. If you have any questions as to whether a particular transaction or change in the way you do business may be outside the ordinary course of business, please give me a call and we will discuss the matter. If, for instance, an entity should propose to buy the entire business, that matter would be subject to the approval of the Bankruptcy Court after appropriate notice and hearing; obtaining or paying back loans would in many cases also require Court approval.

## CASH COLLATERAL

Most deeds of trust have a provision for an assignment of rents. Rental income may, therefore, be cash collateral. Do not use any such income without Court approval. SKYE INTERNATIONAL, INC., must, immediately upon filing the Voluntary Petition, obtain the written consent of secured creditors, or alternatively, authorization from the United States Bankruptcy Court, pursuant to 11 U.S.C. §363(c)(2), to use or sell cash collateral interests in the accounts receivable, cash, inventory, personal property, general intangibles and/or equipment now owned by SKYE INTERNATIONAL, INC. Use of cash collateral, whether it is income from personal property or accounts receivable or rental income without Court approval MAY RESULT IN PERSONAL



TM

LIABILITY OF THE RESPONSIBLE PARTY FOR THE DEBTOR-IN-POSSESSION FOR THE FUNDS USED.

## LEASEHOLD INTERESTS IN REAL PROPERTY

Most leasehold interests in real property terminate within one hundred twenty (120) days of filing the petition unless we take affirmative action.

## OTHER

Other matters we will need to discuss are those connected with the payment of unsecured pre-petition debts (the general rule is, don't pay them). As to any unsecured pre-petition debts which you believe may cause a problem, please call me and we will discuss them. Payments of those amounts will normally require Court authorization. I will see if I can obtain such authorization. As to payment of post- petition amounts, these amounts should be paid promptly and in the ordinary course of business. Please contact me immediately if there is any question in your mind as to whether a particular payable is partially pre- and partially post-petition, and if so, how it should be dealt with.

You will need to comply with the normal paperwork and reporting requirements of State and Federal taxing authorities. For instance, W-2 forms for all employees must be completed and distributed in a timely fashion. The filing of a petition in bankruptcy does not obviate requirements of this nature. Other issues involving taxes may need to be discussed after complete information regarding your particular situation is gathered and analyzed, and more than likely, a tax accountant professional will be hired to perform the necessary work in filing tax returns.

Another matter which we will discuss at greater length after I have reviewed the Statement of Affairs which you have filled out, is the issue of preferences. It is at least possible that certain of your creditors who were paid within ninety (90) days of the bankruptcy petition may be forced to disgorge those amounts back to the estate. However, this will require further discussion and analysis.

Another matter which will require discussion is the state of your insurance policies. It is necessary to maintain insurance on the property of the estate, so that no diminution of estate property may occur as a result of a fire or similar event. We will discuss this matter further. I will continue to keep you informed of the progress of the case. We will need to stay in fairly close communication. I hope this is a quickly concluded, successful reorganization.


T.M

## TRUSTEE'S FEES

Since 1988, there has been a quarterly fee charged to Chapter 11 debtors, the purpose of which is to help defray the cost of operating the Bankruptcy Court system. The fee is based upon the quarterly disbursements of the Debtor in the following categories:

| DISBURSEMENT OF: | THE FEE, PER QUARTER, IS: |
|---|---|
| $14,999 or less | $325.00 |
| $15,000 to $74,999.99 | $650.00 |
| $75,000 to $149,999.99 | $975.00 |
| $150,000 to $224,999.99 | $1,625.00 |
| $225,000.00 to $299,999.99 | $1,950.00 |
| $300,000 to $999,999.99 | $4,875.00 |
| $1,000,000 to $1,999,999.99 | $6,500.00 |
| $2,000,000 to $2,999,999.99 | $9,750.00 |
| $3,000,000 to $4,999,999.99 | $10,400.00 |
| $5,000,000 to $14,999,999.99 | $13,000.00 |
| $15,000,000 to $29,999,999.99 | $20,000.00 |
| $30,000,000 or more | $30,000.00 |

The fee is payable on the last day of the calendar month following the calendar quarter for which the fee is owed. **The requirement for a Debtor-in-Possession to pay the quarterly fee terminates upon the entry of an Order closing your Chapter 11 case or dismissing the case.** Failure to pay the quarterly Trustee's fee within a timely fashion may result in the U.S. Trustee filing


TM

a MOTION TO DISMISS OR CONVERT TO CHAPTER 7 the Chapter 11 proceeding. It will be your responsibility to comply with the quarterly reporting requirements imposed by the Office of the U.S. Trustee.

It is important for you to realize that the undersigned and his law firm represent the interests of SKYE INTERNATIONAL, INC., a Nevada corporation, and not your personal interests or those of any shareholder or director or officer of SKYE INTERNATIONAL, INC.

If you find that the foregoing constitutes a correct and complete statement of the agreement under which you have retained BELDING, HARRIS & PETRONI, LTD., please indicate your agreement in the space provided below. Feel free to contact me regarding any questions you might have. Thank you.

Very truly yours,

Stephen R. Harris

STEPHEN R. HARRIS, ESQ.

SRH/eb

**CONTENTS OF THIS RETAINER LETTER READ, ACCEPTED AND ACKNOWLEDGED BY:**

SKYE INTERNATIONAL, INC., a Nevada corporation

[signature]

By: Ted Marek, Secretary - Treasurer and Director
SKYE INTERNATIONAL, INC.

Dated: November 23, 2009

TM