**Entered on Docket
March 02, 2010**

_____
**Hon. Gregg W. Zive
United States Bankruptcy Judge**

STEPHEN R. HARRIS, ESQ.
**Nevada Bar No. 001463**
CHRIS D. NICHOLS, ESQ.
**Nevada Bar No. 003123**
BELDING, HARRIS & PETRONI, LTD.
417 West Plumb Lane
Reno, Nevada  89509
Telephone:  (775) 786-7600
Facsimile:  (775) 786-7764

Attorneys for Debtor and
Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

* * * * *

| | |
|---|---|
| IN RE: | Case No. 09-54485<br>(Chapter 11) |
| SKYE INTERNATIONAL, INC.<br>a Nevada corporation, | **FINAL ORDER AUTHORIZING DEBTOR TO OBTAIN DEBTOR-IN-POSSESSION FINANCING UNDER 11 U.S.C. §§105 AND 364(c), AND <u>FRBP 4001(c)</u>** |
| Debtor.<br>_____/ | Hrg. DATE:    2-19-10<br>Hrg. TIME:    10:00 a.m. |

Based on the MOTION FOR ORDER AUTHORIZING DEBTOR TO OBTAIN

INTERIM POST-PETITION FINANCING, USE CASH COLLATERAL, GRANT

SECURITY INTERESTS AND SUPERPRIORITY STATUS, AND OTHER RELIEF

("Motion"), filed on December 16, 2009, [Docket No. 6] by SKYE INTERNATIONAL,

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

1

INC., a Nevada corporation, Debtor and Debtor-in-Possession in the above Chapter 11 case ("Debtor" or "Borrower"), and based upon the INTERIM ORDER AUTHORIZING DEBTOR TO OBTAIN DEBTOR-IN-POSSESSION FINANCING UNDER 11 U.S.C. §105 and 354(c) and FRBP 4001(c), entered on December 23, 2009, [Docket No. 35] (collectively "Motion") which Motion further sought a final Order Authorizing Debtor to obtain Debtor-in-Possession financing, with a duly noticed hearing to consider the Motion on an interim lending basis conducted on December 21, 2009 at 12:30 p.m., and a duly noticed hearing to consider the Motion on a final lending basis conducted on February 19, 2010, at 10:00 a.m.; with CHRIS D. NICHOLS, ESQ. of BELDING, HARRIS & PETRONI, LTD., appearing on behalf of the Debtor, and the representative of the Debtor, GREGG C. JOHNSON also present; CHRISTOPHER JAIME, ESQ., MAUPIN, COX & LeGOY, appeared on behalf of the proposed Lender, Summit Growth Management, LLC., a Nevada limited liability company ("Lender"); with WILLIAM COSSETT, ESQ., present on behalf of the Office of the United States Trustee; the Court having considered oral argument for the relief requested; and the oral testimony of GREGG C. JOHNSON, and no written opposition having been filed; and the Court having reviewed all the papers and pleadings on file herein, the Court having placed its Findings of Fact and Conclusions of Law on the record incorporating them herein pursuant to Fed.R.Bankr.P. Rule 7052 incorporating Fed.R.Civ.P. Rule 52, and for good cause appearing:

**IT IS HEREBY ORDERED** that the Debtor's MOTION FOR ORDER AUTHORIZING DEBTOR TO OBTAIN INTERIM POST-PETITION FINANCING, USE CASH COLLATERAL, GRANT SECURITY INTERESTS AND SUPERPRIORITY

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

STATUS, AND OTHER RELIEF brought pursuant to 11 U.S.C. §§105 and 364(c) and FRBP 4001(c), wherein Debtor-in-Possession financing approval is requested for the sum of $2,000,0000.00, is GRANTED on a final lending basis, upon the terms and conditions set forth in the subject Motion and specifically as follows:

      (a)    General. The DIP Lending Facility, as defined in the Motion, shall be a two stage facility comprised as follows: (i) Interim DIP Financing and (ii) Final Post-Confirmation Funding, as more fully set forth below. All disbursements under the DIP Lending Facility shall bear interest as set forth below and shall be secured by all of the Collateral and Property (as both terms are defined in the DIP Lending Facility Agreement) identified hereinbelow. Amounts borrowed under the Interim DIP Financing and repaid or prepaid may not be re-borrowed, but amounts borrowed under the Final Post-Confirmation Funding may be re-borrowed as set forth below.

      (b)    Interim DIP Financing. $1,000,000.00 to be disbursed in two tranches as follows: (i) Tranche A - as soon as practicable after commencement of the Chapter 11 Case, and after the entry of this Interim Financing Order, and after Lender receives an opinion letter from Debtor's patent counsel that all of the Debtor's Intellectual Property (including specifically all patents and patents pending) are or will be titled in Debtor's name and there are no claims pending or threatened against the Intellectual Property and the satisfaction of the additional conditions precedent noted below, $500,000 of which actual disbursement to Debtor shall be net of $80,000 previously advanced, including $30,000 for general bankruptcy counsel fees and retainer, plus an additional $30,000 payable to general bankruptcy counsel within five (5) days after receiving approval for Interim Debtor-In-Possession Financing, and net of

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

3

$25,000 in Points, as described in 2.1(c) of the DIP Lending Facility Agreement, as attached as Exhibit "A" to the Motion, which is incorporated herein by reference, for a net disbursement to Debtor under Tranche A not to exceed $395,000; and (ii) Tranche B – upon the later of (i) sixty (60) days after the initial disbursement of Tranche A, (ii) Lender has conducted and completed such due diligence as it deems, in its sole discretion, necessary to confirm Debtor's patents are valid and expressly titled in Debtor's name and (iii) Debtor has executed and delivered all necessary documentation to grant Lender a priority senior secured interest in the Debtor's Intellectual Property (including specifically all patents and patents pending) and all other Collateral as defined in the DIP Lending Facility Agreement, as necessary, an additional $500,000. Provided; Lender shall not be obligated to disburse Tranche A or Tranche B of the Interim DIP Financing if a Default or Event of Default has occurred and is continuing. Notwithstanding the foregoing, this Order shall provide for an automatic perfection of the superpriority Liens of Lender upon entry but that shall not relieve Debtor from compliance with this paragraph or other obligations herein.

    (c) Final Post-Confirmation Funding. An additional $1,000,000 to be disbursed in two tranches as follows: (i) Tranche A - within ten (10) days after entry of an order confirming a plan of reorganization $500,000 of which actual disbursement to Debtor shall be net of $25,000 in Points, as described in Section 2.1(c) of the DIP Lending Facility Agreement, for a net disbursement under this Tranche A not to exceed $475,000; and (ii) Tranche B – three (3) months after the entry of a final order confirming a plan of reorganization, an additional amount not to exceed $500,000. Provided; Lender shall not be obligated to disburse Tranche A or Tranche B of the Final Post-

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

Confirmation Funding if a Default or Event of Default has occurred and is continuing. The amounts borrowed under the Final Post-Confirmation Funding may be repaid or prepaid and may be re-borrowed, so long as all monies due under the Interim DIP Financing have been fully paid. Such future re-borrowing shall be subject to the remaining terms and conditions of the Lending Facility.

        (d)    Use of Proceeds. The proceeds of the Post-Petition Loans referenced in Section 1.1 of the DIP Lending Facility Agreement and any Net Proceeds as defined therein not required to be applied as provided in Section 4.7(b) of the DIP Lending Facility Agreement shall be used during the pendency of the Chapter 11 Case for short-term working capital liquidity needs of Debtor and payment of general bankruptcy counsel and legal fees, as more fully set forth herein (and shall not in any event be used to pay any pre-petition claims without Lender's prior written consent and an appropriate order of the Court). Notwithstanding anything to the contrary contained herein and in the Budget, attached to the DIP Lending Facility Agreement as Schedule I, in no event shall proceeds of Post-Petition Loans referenced in Section 1.1 of the DIP Lending Facility Agreement and any such Net Proceeds be used to pay any Professional Expenses incurred in connection with the assertion of or joinder in any claim, counterclaim, action, contested matter, objection, defense or other proceeding, the purpose of which is to seek or the result of which would be to obtain any order, judgment, declaration, or similar relief (a) invalidating, setting aside, avoiding or subordinating, in whole or in part, any of the obligations or liens and security interests in any of the Collateral or Property granted to Lender under the DIP Lending Facility Agreement or the Financing Orders; (b) declaring any of the DIP Financing Documents

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

to be invalid, not binding or unenforceable in any respect, (c) preventing, enjoining, hindering or otherwise delaying Lender's enforcement of any of the DIP Financing Documents or any realization upon any Collateral (unless such enforcement or realization is in direct violation of an explicit provision in any of the Financing Orders); (d) declaring any liens granted or purported to be granted under any of the DIP Financing Documents to have a priority other than the priority set forth therein; or (e) objecting to the amount or method of calculation by Lender of any of the Obligations. Nothing herein shall be construed to waive Lender's right to object to any requests, motions or applications made in or filed with the Bankruptcy Court, including any applications for interim or final allowances of Professional Expenses, or waiver or Debtor's statutory and fiduciary obligations on behalf of the Debtor's Estate.

    (e) Rates of Interest. Until Full Payment (whether at stated maturity, on acceleration or otherwise), (i) the unpaid principal of the Interim DIP Financing shall bear interest at the rate of ten percent (10%) per annum and (ii) the unpaid principal balance of the Final Post-Confirmation Funding shall bear interest at the rate of ten percent (10%) per annum.

    (f) Default Rate of Interest. From and after the occurrence of any Event of Default which remains uncured for ten (10) business days, but only so long as such Event of Default is continuing, the principal amount of the Obligations shall bear interest at the Default Rate, as stated in the DIP Lending Facility Agreement.

    (g) Points. Debtor shall pay Lender and Lender shall deduct from the DIP Loan an amount equal to two and one-half (2 ½) Points on the Interim DIP Financing and two and one-half (2 ½) Points on the Final Post-Confirmation Funding at

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

6

the time Tranche A of the Interim DIP Financing and Tranche A of the Final Post-Confirmation Funding are disbursed.

(h) Payment of the Interim DIP Financing. Full Payment of the total outstanding principal, together with all accrued interest, shall be due and payable in full at the later of (i) the entry of a final decree closing the Chapter 11 Case; or (ii) two (2) years from the initial disbursement of Tranche A of the Interim DIP Financing.

(i) Payment of the Final Post-Confirmation Funding. Full Payment of the total outstanding principal, together with all accrued interest, shall be due and payable in full two (2) years from the date of the initial disbursement of Tranche A of the Final Post-Confirmation Funding.

(j) Senior Liens. Pursuant to Section 364(c)(2) of the Bankruptcy Code, Lender shall have automatic and valid and perfected first priority senior security interests in and liens upon all Collateral that, as of the Petition Date, is not subject to other valid, perfected and non-avoidable liens.

(k) Junior Liens. Pursuant to Section 364(c)(3) of the Bankruptcy Code, Lender shall be granted automatic and valid and perfected junior security interests in and liens upon all Collateral that is subject to valid, perfected and non-avoidable liens in existence on the Petition Date, subject to the following modification: Debtor has informed and represented to Lender that its Property (which may include some or all of the Collateral) is subject to existing security interests and liens in favor of (i) the Ted Marek Defined Benefit Pension Plan, December 23, 1993 and effective January 1, 1994, for debt in the approximate amount of $169,585.86 ("Marek Secured Debt") and (ii) Perry D. Logan and Rosario Logan for debt in the approximate amount of

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

7

$399,216.04 ("Logan Secured Debt"). Debtor has also disclosed the existence of debt owed Toyota America in the approximate amount of $9,000 which debt is also secured by existing security interests and liens. Other than the Marek Secured Debt, the Logan Secured Debt and the Toyota America secured debt Debtor has represented and warranted that there is no other existing secured debt. To facilitate the financing extended by Lender under the DIP Lending Facility Agreement, each of the foregoing existing secured creditors (except Toyota), and to the extent necessary Debtor shall waive any benefit of § 364(c)(3) of the Code and have consented to the subordination of the Marek Secured Debt and the Logan Secured Debt, and all security interests and liens on the Debtor's Property (which includes all Collateral and which specifically includes all patents and patents pending) arising from or related thereto, to the obligations owed or to be owed and the liens granted or to be granted Lender pursuant to the DIP Lending Facility Agreement. It is the intent and purpose of the subordination to place Lender's secured interest in the Debtor's Property (including all Collateral and specifically including all patents and patents pending) over and above any existing secured interest or lien arising from or related to the Marek Secured Debt and the Logan Secured Debt so that Lender shall have a first, senior and superior priority secured interest in and on all of Debtor's Property (which includes all Collateral and specifically includes all patents and patents pending) to the full extent of the Obligations herein.

(I)  Superpriority Claim. Lender shall be deemed to have an allowed superpriority administrative expense claim (the "Superpriority Claim") in an amount equal to all Debtor's obligations to Lender pursuant to Section 364(c)(1) of the Bankruptcy Code over all other administrative expenses in the Chapter 11 case of the

kind specified or arising or ordered pursuant to Sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 726 or 1114 of the Bankruptcy Code. The Superpriority Claim shall not attach to any Avoidance Claims or any Avoidance Proceeds.

(m) Conversion Rights Applicable to Final Post-Confirmation Funding. At Lender's option, debt owing under the Final Post-Confirmation Funding may be converted into preferred stock of the Debtor. Lender's preferred series of convertible stock shall have dividend preference (cumulative or accrued dividend equal to 10% per annum), liquidation preference, anti-dilution rights, and conversion rights to common at a ratio based on the ten (10) day moving average of the closing price of SKYE securities (Symbol: SKYI) for the period prior to a call for conversion with a floor of $0.20/share and a ceiling of $0.25/share. Anti-dilution provision will provide rights only to purchase any offering in an amount sufficient to retain then current equity participation.

**IT IS FURTHER ORDERED** that all liens and security interests granted Lender in the DIP Lending Facility Agreement for the extension of credit by Lender and other Obligations of the Debtor under the DIP Lending Facility Agreement and as set forth

///
///
///
///
///
///
///

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

above shall be and hereby are automatically perfected and shall have the priority stated in the DIP Lending Facility Agreement and this Order shall be deemed sufficient for purposes of such perfection and establishing priority.

Submitted by:

STEPHEN R. HARRIS, ESQ.
CHRIS D. NICHOLS, ESQ.
BELDING, HARRIS & PETRONI, LTD.

By _____
  Attorney for Debtor

Approved/Disapproved this 26th day of February, 2010.

CHRIS JAIME, ESQ.
MAUPIN, COX & LeGOY

By _____
  Attorney for Lender

Approved/Disapproved this ____ day of _____, 2010.

WILLIAM COSSITT, ESQ.
OFFICE OF UNITED STATES TRUSTEE

By  /S/ William B. Cossitt
    2010.03.01 09:01:46 -08'00'

#####

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

10