STEPHEN R. HARRIS, ESQ.
**Nevada Bar No. 001463**
CHRIS D. NICHOLS, ESQ.
**Nevada Bar No. 003123**
BELDING, HARRIS & PETRONI, LTD.
417 West Plumb Lane
Reno, Nevada  89509
Telephone:  (775) 786-7600
Facsimile:  (775) 786-7764

Attorneys for Debtor and
Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

* * * * *

| | |
|---|---|
| IN RE: | Case No. BK 09-54485 gwz |
| | (Chapter 11) |
| SKYE INTERNATIONAL, INC.<br>a Nevada corporation, | |
| | Hrg. DATE:    To Be Set<br>Hrg. TIME:    To Be Set<br>Est Time:     1 hour |
| Debtor. | |
| _____/ | |

# DEBTOR'S FIRST AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION

Dated:        May 20, 2010

Filed by:     STEPHEN R. HARRIS, ESQ.
              CHRIS D. NICHOLS, ESQ.
              BELDING, HARRIS & PETRONI, LTD.
              417 West Plumb Lane
              Reno, Nevada  89509
              Telephone:  (775) 786-7600

              Attorneys for Debtor and
              Debtor-in-Possession

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

1

**I.    INTRODUCTION AND DEFINITIONS**

A.    <u>INTRODUCTION</u>

A voluntary petition for Chapter 11 Relief was filed on December 16, 2009.  No trustee has been appointed and Debtor acts as Debtor-in-possession herein.

The document you are reading is both the Debtor's First Amended Plan of Reorganization ("Plan") and the Debtor's First Amended Disclosure Statement ("Disclosure Statement"), which is titled THE DEBTOR'S FIRST AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION.  The Debtor has proposed the Plan to treat the claims of the Debtor's creditors and its interests.  The Disclosure Statement describes the assumptions that underlie the Plan and how the Plan will be executed.

Prior to entertaining a hearing on confirmation of the Debtor's Plan, the Bankruptcy Court in this Chapter 11 case (the "Court") will be asked to approve the form of this document as an adequate DISCLOSURE STATEMENT, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan.  The Court has not yet confirmed the Plan, which means the terms of the Plan are not now binding on anyone.

A hearing date and time to determine whether the Court will confirm the Plan will be scheduled at a later date, with all interested parties receiving notice of the same.

Any interested party desiring any further information should contact the attorney for the Debtor:

///

///

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

2

STEPHEN R. HARRIS, ESQ.
CHRIS D. NICHOLS, ESQ.
BELDING, HARRIS & PETRONI, LTD.
417 W. Plumb Lane
Reno, NV 89509
(775) 786-7600
Fax:  (775) 786-7764 or 786-1633

B.      DEFINITIONS

SCOPE OF DEFINITIONS.

.      For the purposes of this DEBTOR'S FIRST AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION, all capitalized terms and otherwise defined terms shall have the meanings assigned to them in this Article I.  Whenever the context requires, such terms shall include the plural number as well as the singular and the female and/or masculine gender as well as the neuter.

1.      "ADMINISTRATIVE CLAIM."  This term shall refer to and mean every claim that is entitled to allowance under Section 503(b) of the Bankruptcy Code or otherwise entitled to priority pursuant to Section 507(a)(1) of the Bankruptcy Code, arising prior to the Effective Date, including, without limitation: **(a)** any actual, necessary expense preserving the Estate, including, without limitation, expenses necessary or appropriate to carry out, facilitate, or effectuate this Plan; **(b)** any amount required to be paid under Section 365(b) of the Bankruptcy Code in connection with the curing of defaults under executory contracts or unexpired leases; and **(c)** all allowances, including professional fees and costs, approved by the Bankruptcy Court for Debtor's professionals and members of and professionals employed by the Unsecured Creditors' Committee.

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

3

2.      "ALLOWED ADMINISTRATIVE CLAIM" shall mean an Administrative Claim:  **(a)** as to which no objection has been filed or, if an objection has been filed, such objection has been resolved by the allowance of such Administrative Claim by a Final Order; **(b)** which requires payment in the ordinary course of  the business of the Debtor and as to which there is no order of the Bankruptcy Court in effect which prohibits any such payment; or **(c)** which requires payment pursuant to a Final Order.

3.      "ALLOWED CLAIM" or "ALLOWED INTEREST" shall mean claims against or interest in the Debtor to the extent that--

        (a)      Proof of claim or interest was--

                (i)      timely filed;

                (ii)      deemed filed, if such claim or interest appears in the schedules filed herein, unless such claim or interest is scheduled as disputed, contingent, or unliquidated; or

                (iii)  late filed--

                    (A) with leave of the Bankruptcy Court; or

                    (B) without objection by the Debtor-in-Possession within a time fixed by the Bankruptcy Court; and

        (b)      (i)      the Debtor-in-Possession does not file an objection within a time fixed by the Bankruptcy Court; or

                (ii)      the claim or interest is allowed by a Final Order; or

                (iii)      the claim or interest is allowed under this PLAN.

4.      "ALLOWED PRIORITY CLAIM" shall mean a Priority Claim which is an Allowed Claim.

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

5.      "ALLOWED SECURED CLAIM" shall mean an Allowed Claim secured by a lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to setoff under Section 553 of the Code, to the extent of the value (determined in accordance with Section 506(a) of the Code) of the interest of the holder of such Allowed Claim in the Debtor's interest in such property or to the extent of the amount subject to such set-off, as the case may be.

6.      "ALLOWED SUBORDINATED CLAIM" shall mean an Allowed Claim arising from any Indebtedness evidenced by or related to the claim of a Subordinated Creditor.

7.      "DEFINITION OF THE BALLOT" shall mean the Ballot(s) for accepting or rejecting this Plan in a form(s) approved by the Bankruptcy Court.

8.      "BANKRUPTCY CODE" as used herein refers to Title I of Public Law No. 95-598, as codified in Title 11 of the United States Code, and all amendments thereto.

9.      "BANKRUPTCY COURT" (or "COURT") shall mean the United States Bankruptcy Court, for the District of Nevada, in which the Debtor's Chapter 11 case is pending, such other court as has jurisdiction in this Chapter 11 case, and any court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

10.     "BANKRUPTCY RULES" shall mean the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. § 2075, including any amendments thereto, which are in effect before and as of the Confirmation Date, and thereafter during the Reorganization Case, to the extent that they are consistent with vested rights under this Plan and the Confirmation Order.

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

11.    "BUSINESS DAY" shall mean any day except Saturday, Sunday, or a day on which commercial banks in Washoe County, Nevada, are authorized or required by law to close.

12.    "CLAIM" shall mean:  **(a)** any right to payment from the Debtor or its Estate, including an Administrative Claim, whether or not such right is reduced to judgment, or is liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; and **(b)** any right to an equitable remedy for breach of performance of such breach gives rise to a right to payment from the Debtor or its Estate, including an Administrative Claim, whether or not such right to an equitable remedy is reduced to judgment, or is fixed, contingent, matured, unmatured, disputed, secured or unsecured.

13.    "CLAIMANT" shall mean the holder of an Allowed Claim or an Allowed Administrative Claim.

14.    "CLASS" shall mean any class into which Allowed Claims or Allowed Interests are classified pursuant to Article IX (Description and Treatment of Claims and Interests).

15.    "COMMENCEMENT DATE" (or "PETITION DATE") shall mean the date the Order for Chapter 11 Relief was entered in this case (December 16, 2009), which date shall be utilized to determine the cessation of interest on certain claims and the date of commencement of the rights of certain creditors to make claim for administrative expenses and allowances, among other rights that are determined by relation to said date.

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

16. "CONFIRMATION" shall mean the entry of the Confirmation Order by the United States Bankruptcy Court.

17. "CONFIRMATION DATE" shall mean the date on which the Confirmation Order is entered on the Bankruptcy Court's docket.

18. "CONFIRMATION ORDER" shall mean the Order of the Bankruptcy Court confirming this Plan, pursuant to Section 1129 of the Bankruptcy Code, and approving the transactions contemplated herein, which shall be in form and substance acceptable to the proponents.

19. "CREDITOR" shall mean any entity that has a claim against the Debtor, which claim arose to or before the Commencement Date, including any claim that may arise under 11 U.S.C. Sections 502(f), 502(g), 502(h) and 502(l).

20. "DEBTOR" shall mean SKYE INTERNATIONAL, INC., a Nevada corporation, which Debtor hereby proposes a DEBTOR'S FIRST AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION.

21. "DEBTOR'S PROFESSIONALS" shall mean STEPHEN R. HARRIS, ESQ., and CHRIS D. NICHOLS, ESQ., of the law firm of BELDING, HARRIS & PETRONI, LTD., as Debtor's general bankruptcy counsel; and all other professionals retained by the Debtor with approval of the Bankruptcy Court, in accordance with Section 327 of the Bankruptcy Code.

22. "DISCLOSURE STATEMENT" means the written DEBTOR'S FIRST AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION, which is approved by the Bankruptcy Court under Section 1125 of the Bankruptcy Code.

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

23.    "DISPUTED CLAIM" shall mean every claim that is not an Allowed Claim or an Allowed Administrative Claim or to which the Debtor or the Unsecured Creditors' Committee file an objection before the deadline for objection set forth in this Plan or an operative order of the Bankruptcy Court.

24.    "EFFECTIVE DATE of the PLAN" shall mean the first Business Day which is at least thirty (30) calendar days after all of the following have occurred (so long as they remain in effect):  **(a)** this Plan has been confirmed pursuant to the Confirmation Order and the Confirmation Order remains in full force and effect without material modification thereof; **(b)** there is not in effect any stay, injunction or restraining order or any other order of any kind which has been issued by a Court of competent jurisdiction or other governmental entity staying, restricting or prohibiting the effectuation of this Plan; and **(c)** there is not in effect any statute, rule, regulation or order enacted, promulgated or entered which is applicable to the effectuation of this Plan of which results in the consequences referred to in subsection (b) immediately above.

25.    "EQUITY HOLDINGS" shall mean the shareholder's equity interests in the Debtor, SKYE INTERNATIONAL, INC., a Nevada corporation, by any instrument evidencing an ownership interest in the Debtor, whether or not transferable, and all options, warrants, or rights, contractual or otherwise, to acquiring such interests, all as of Effective Date.

26.    "ESTATE" shall mean the Estate created in this Reorganization Case pursuant to Section 541 of the Bankruptcy Code.

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

8

27.    "EXPIRATION DATE" shall mean the last date determined by the Bankruptcy Court for the casting of Ballots, which date shall be acceptable to the proponents.

28.    "FINAL ORDER" shall mean a final order, judgment or other decree of the Bankruptcy Court or other Court of competent jurisdiction which has not been vacated, reversed, saved, modified or amended **(a)** as to which **(i)** the time to appeal or seek review or rehearing has expired and as to which no appeal, petition for certiorari, request for review or rehearing is pending, or **(ii)** if appeal, review, rehearing or certiorari of the order has been sought, the order has been affirmed or the request for review, rehearing or certiorari has been denied, the time to seek a further appeal, review, rehearing or certiorari has expired, and **(b)** as a result of which such orders shall become final and not appealable in accordance with applicable law.

29.    "LIEN" shall mean a charge or encumbrance against or interest in property of the Debtor or the Estate to secure the payment of a debt or performance of an obligation, and includes any right of setoff under Section 553 of the Bankruptcy Code.

30.    "PERSON" includes individual, partnership, corporation, association, joint stock company, joint venture, estate, trust, unincorporated organization, any governmental unit or political subdivision thereof, or other entity, and all of the respective heirs, personal representatives, successors and assigns.

31.    "PETITION DATE" shall mean December 16, 2009, the date on which the Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code was entered by this Court commencing the Debtor's Reorganization case.

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

9

32. "PLAN" means this DEBTOR'S FIRST AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION, and the filing by the Plan proponent of any amendments or modifications thereof or supplements thereto, as permitted by the Bankruptcy Court or the Bankruptcy Rules.

33. "PRIORITY CLAIM" shall mean a claim entitled to priority under Section 507(a)(2)-(8) of the Bankruptcy Code.

34. "PROPONENT" shall mean the Debtor acting as the proponent of this Plan.

35. "PRO RATA SHARE" shall mean the proportion that an Allowed Claim in a particular class bears to the aggregate amount of all Allowed Claims in such class.

36. "PURCHASER" shall mean the transferee of a voluntary transfer.

37. "RECORD DATE" shall mean, for purposes of voting, the date of entry by the Bankruptcy Court of the Order Approving the Disclosure Statement and, for purposes of distribution, the Confirmation Date.

38. "REORGANIZATION CASE" shall mean the Debtor SKYE INTERNATIONAL, INC.'s case under Chapter 11 of the Bankruptcy Code, which is currently pending before the Bankruptcy Court as Case No. BK-N 09-54485.

39. "REORGANIZED DEBTOR" shall mean SKYE INTERNATIONAL, INC., a Nevada corporation, on and after the Effective Date.

40. "SKYE INTERNATIONAL, INC.'s ASSETS" shall mean all assets and property of every kind, nature and description of which the Debtor or its Estate has any right, title or interest, including but not limited to: vehicles, office equipment, tools,

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

10

patents, trademarks, tradenames, intellectual property, furniture, fixtures, all cash, cash equivalents, bank deposits, instruments, credit of instruments, certificates of deposit and drafts; all executory contracts and leases which are not and have not been rejected; all choses in action; and all claims, demands, causes of action, damages and obligations of any nature whatsoever, known or unknown in law or inequity, including, without limitation, claims or causes of action arising under the Bankruptcy Code (including, without limitation, Sections 362, 510 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code), or under any Nevada statute or regulation relating to the operations of SKYE INTERNATIONAL, INC.

41.    "SECURED CLAIM" shall mean the claims of note holders and, for purposes of this Plan, any other claim secured by a lien which is valid, perfected, enforceable and not avoidable.  If the value of the creditors' interest and the Estate's interest in the property securing a claim is not sufficient to satisfy such claim, then in accordance with Section 506 of the Bankruptcy Code and subject to Section 1111(b) of the Bankruptcy Code, such claim shall be deemed to be an unsecured claim under this Plan to the extent of any insufficiency in the value of the creditors' interest.

42.    "UNSECURED CLAIM" shall mean any claim which is not a Secured Claim, Priority Claim, Administrative Claim, or an unclassified claim or the kind described in Section 507(a)(7) of the Bankruptcy Code.

A term used in this Plan that is not defined in this Plan but that is used in the Bankruptcy Code has the meaning assigned to the term in the Bankruptcy Code.

///

///

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

11

## II. GENERAL DISCLAIMER AND VOTING PROCEDURE

PLEASE READ THIS DOCUMENT, INCLUDING THE ATTACHED EXHIBITS, CAREFULLY.  IT EXPLAINS WHO MAY OBJECT TO CONFIRMATION OF THE PLAN. IT EXPLAINS WHO IS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.  IT ALSO TELLS ALL CREDITORS WHAT TREATMENT THEY CAN EXPECT TO RECEIVE UNDER THE PLAN, SHOULD THE PLAN BE CONFIRMED BY THE COURT.

THE SOURCES OF FINANCIAL DATA RELIED UPON IN FORMULATING THIS DOCUMENT ARE SET FORTH IN SECTION X BELOW.  THE DATA HEREIN HAVE NOT BEEN SUBJECT TO AUDIT.  THE DEBTOR HAS ATTEMPTED TO BE ACCURATE IN ITS PREPARATION OF THE PLAN AND SUPPORTING DOCUMENTS. ALL REPRESENTATIONS ARE TRUE TO THE BEST KNOWLEDGE OF DEBTOR.

NO REPRESENTATIONS CONCERNING THE DEBTOR THAT ARE INCONSISTENT WITH ANYTHING CONTAINED HEREIN ARE AUTHORIZED EXCEPT TO THE EXTENT, IF AT ALL, THAT THE COURT ORDERS OTHERWISE.

After carefully reviewing this document and the attached exhibits, please vote on the enclosed ballot and return it in the enclosed envelope.

The Debtor will schedule a date and time for hearing to determine whether the Court will confirm the Plan.  Please refer to the NOTICE OF HEARING ON CONFIRMATION OF DEBTOR'S PLAN OF REORGANIZATION for the specific hearing date.  If, after receiving the ballots, it appears that the Debtor has the requisite number of votes required by the Code, the Debtor will submit and file an order confirming the Plan.  Any opposition(s) or objection(s) to the Plan shall be filed and served on the

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

Debtor's counsel no later than seven (7) days prior to the plan confirmation hearing date, or earlier date if ordered by the Court, and any reply pleading(s) shall be filed and served no later than two (2) days prior to any confirmation hearing.  Failure to oppose the confirmation of the Plan may be deemed consent to the Plan's confirmation.

## III.    WHO MAY OBJECT TO CONFIRMATION OF THE PLAN

Any party in interest or creditor may object to confirmation of the Plan, but as explained below, not everyone is entitled to vote to accept or reject the Plan.

## IV.    WHO MAY VOTE TO ACCEPT OR REJECT THE PLAN

To vote either to accept or reject the Plan, you must have both an allowed <u>and</u> impaired claim. A claim is defined by the Code to include a right to payment from the Debtor.

To vote, a creditor must first have an <u>allowed claim</u>.  With the exceptions explained below, a claim is allowed if a proof of the claim is properly filed before any bar date and no party in interest has objected, or if the Court has entered an order allowing the claim or interest.  Please refer to Section VI below for specific information regarding bar dates in this case.

Under certain circumstances a creditor may have an allowed claim even if a proof of claim was not filed and the bar date for filing a proof of claim has passed.  A claim is deemed allowed if the claim is listed on the Debtor's schedules and is not scheduled as disputed, contingent, or unliquidated.

In order to vote, an allowed claim must also be impaired by the Plan.

<u>Impaired creditors</u> include those whose legal, equitable, and contractual rights are altered by the Plan, even if the alteration is beneficial to the creditor.  A contract

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

13

provision that entitles a creditor to accelerated payment upon default does not, however, necessarily render the claimant impaired, even if the Debtor defaulted and the Plan does not provide the creditor with accelerated payment. The creditor is deemed unimpaired so long as the Plan cures the default, reinstates the maturity of such claim as it existed before default, and compensates for any damages incurred as a result of reasonable reliance upon the acceleration clause.

There are also some types of claims which the Code required to be treated a certain way. For that reason they are considered unimpaired and therefore holders of these claims cannot vote.

To summarize, there are two prerequisites to voting: a claim must be both allowed and impaired under the Plan.

If a creditor has an allowed and impaired claim, then he or she may vote either to accept or reject the Plan (unimpaired claimants are deemed to have accepted the Plan). Impaired claims are placed in classes and it is the class that must accept the Plan. Members of unimpaired classes do not vote, although as stated above, they may object to confirmation of the Plan. Even if all classes do not vote in favor of the Plan, the Plan may nonetheless be confirmed if the dissenting classes are treated in a manner prescribed by the Code. Please refer to Section VI below for information regarding impaired and unimpaired classes in this case.

Section IX sets forth which claims are in which class. Secured claims are placed in separate classes from unsecured claims. Fed. R. Bankr. P. 3018(d) provides: "A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim shall be entitled to accept or reject a Plan in both capacities."

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

14

## V.    VOTES NECESSARY TO CONFIRM THE PLAN

The Court may confirm the Plan if at least one non-insider impaired class of claims has accepted and certain statutory requirements are met as to both non-consenting members within a consenting class and as to dissenting classes.  A class of claims has accepted the Plan when more than one-half in number and at least two-thirds in amount of the allowed claims actually voting, vote in favor of the Plan.  It is important to remember that even if the requisite number of votes to confirm the Plan is obtained, the Plan will not bind the parties unless and until the Court makes an independent determination that confirmation is appropriate.  That is the subject of any upcoming confirmation hearing.

## VI.    INFORMATION REGARDING VOTING IN THIS CASE

The bar date for filing a proof of claim in this case is April 26, 2010.

The bar date for objecting to claims will be sixty (60) days after the date on which the Plan is confirmed by the Court.

In this case the Debtor believes that the Class 2 Secured Claim of Thaddeus Marek, Class 3 Secured Claim of Perry and Rosario Logan, Class 5 General Unsecured Claims, Class 6 Equity Claims and Class 7 Stock Option Claims are impaired and therefore entitled to vote.  Class 1 and Class 4 are unimpaired and therefore do not vote A party that disputes the Debtor's characterization of its claim as unimpaired may request a finding of impairment from the Court in order to obtain the right to vote.

Ballots must be received by the Debtor addressed to STEPHEN R. HARRIS, ESQ., and CHRIS D. NICHOLS, ESQ., at 417 West Plumb Lane, Reno, Nevada 89509, or faxed to (775) 786-7764 or (775) 786-1633, or email at steve@renolaw.biz and

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

15

cnichols@renolaw.biz at least five (5) days prior to the Plan confirmation hearing date or such other date as may be ordered by the Bankruptcy Court.  The Ballot Summary will be filed at least one (1) day before the Plan confirmation hearing.

## VII.   DESCRIPTION OF DEBTOR'S PAST AND FUTURE BUSINESS AND EVENTS PRECIPITATING BANKRUPTCY FILING

A.   Background

SKYE INTERNATIONAL, INC., is a publicly traded Nevada corporation, on the OTC BB Exchange under the symbol SKYIQ, originally created on November 23, 1993, as Amexan, Inc., ("SKYE or "Debtor").  The name was changed on 1998 to Nostalgia Motor Cars, Inc.  Prior to the name change, Amexan was an inactive company from the date of incorporation.  On June 11, 2002, the name was changed to Elution Technologies, Inc.  On June 4, 2003, in connection with the pending acquisition of Envirotech Systems Worldwide, Inc., and the commencement of the Debtor's current line of business, it changed its name to Tankless Systems Worldwide, Inc.  The Debtor's acquisition of Envirotech Systems Worldwide, Inc., was completed on November 7, 2003 in a share exchange that resulted in the Debtor acquiring 100% of the issued and outstanding common shares of Envirotech Systems Worldwide, Inc.  On October 21, 2005, as part of its overall plan to create a brand name for its revised business plan and expanded product lines, the company changed its name to Skye International, Inc.

The Debtor had three subsidiary corporations, all of which were wholly-owned and all of which were wound-up or administratively dissolved during the fiscal year ended December 31, 2008:  Envirotech Systems Worldwide, Inc., an Arizona corporation ("Envirotech"); ION Tankless, Inc., an Arizona corporation ("ION"); and Valeo Industries, Inc., a Nevada corporation ("Valeo").  On June 25, 2009, Debtor

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

16

established a subsidiary, Tankless.com, Inc. for purposes of internet business to business and business to customer sales. Although the Debtor completed much of the development work of the website for www.tankless.com, including the deployment of real time e-commerce portal capable of completing retail orders from customers on the web, the Debtor decided to focus its business efforts on the wholesale distribution channel and thus the e-commerce functionality of the tankless.com website has been removed. Debtor will determine at a later date whether or not to continue the pursuit of the business to business or business to customer sales model in addition to the current wholesale strategy.

SKYE® is in the business of designing, developing, manufacturing and marketing consumer life-style products, including initially several models of electric tankless whole-house and point-of-use water heaters. All of SKYE's products are designed by in-house engineering and contract engineers from third-party engineering firms. In an effort to transition to a "fabrication free" business model, all water heaters produced for SKYE are manufactured by third-party contract manufacturers. The company first entered its current line of business through the acquisition of Envirotech and its product line – the ESI-2000 Electric Tankless water heater. The product line never achieved critical sales levels and production of the ESI-2000 product line concluded in late 2005. In response to lack-luster product sales of the ESI-2000, SKYE engaged in a research and development program to design a line of innovative electric tankless whole house water heaters. The first product that SKYE released to the market in October 2008, was the FORTIS™ Electric Tankless Whole House Water Heater. The FORTIS is small, easy to install, and can supply virtually endless amounts of hot water with energy savings.

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

17

FORTIS uses advanced technology and high quality stainless steel components that are expected to provide increased reliability and longevity. SKYE's electric tankless water heaters generate heated water only as long as hot water is required and only at the temperature desired. Since electricity is only used when heated water is required, the cost of heating water can be reduced by as much as 40% or more compared to a storage type water heater. Because all of SKYE's products are compact, durable, self-contained, and safe, they can be installed close to where hot water is being used and are ideal for locations where space is at a premium or where instant hot water is desired.

In 2004, SKYE also commenced a new product research program into thick-film and thin-film resistive heating technologies that provide a means by which water can be heated very quickly without the inherent problem of solids precipitating out of suspension during the heating process and causing premature failures. This process led to the introduction of Paradigm™ product lines. The Paradigm series has been actively pursued and in February, 2010 received its first UL 499 safety certification by Intertek Testing Services and in March 2010 also received CSA 22.2 Canadian certification and, although not required in order to produce and sell the products, Uniform Plumbing Code Certification is expected prior to the end of May 2010. Commercial production of the Paradigm series commenced in late April, 2010 but volume saleable quantities of product are not expected until the third quarter of 2010. Utilizing revolutionary thin-film technology, the HeatWave product line is an inexpensive point-of-use water heating solution. Ideally suited for small lavatory and bathroom applications, the HeatWave provides a commercial building project with an inexpensive

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

18

solution to code requirements for heated water.  SKYE received both the UL 499 and the CSA 22.2 No. 64 certification in January, 2009 and commercial, sales and distribution of the HeatWave_ commenced in the second quarter of SKYE's fiscal year 2009.  Initially product availability was limited as the contract manufacturer tooled up production of the HeatWave series.  SKYE expects that a sufficient volume of production units will be available for distribution and sales commencing May 2010.

The FORTIS, Paradigm and HeatWave product lines, as well as future product lines, are or will be sold primarily through the wholesale market in the U.S., Canada and Mexico.  SKYE expects the majority of product sales to be made through the wholesale distribution channel and it will continue to build this distribution model through the addition of contract third party manufacturer representatives, as well as SKYE sales employees that target and manage sales and distribution to specific vertical markets such as restaurants, spas and salons, pubic/institutional and light commercial to name a few.  SKYE expects the wholesale channel will continue to be the largest distribution channel for the Debtor and to this end it expects to continue to fully support its wholesale channel efforts.

B.    Current Status

SKYE's tangible assets consist of two pending patents, five patents for tankless water heater technology, one registered trademark for SKYE (and related artwork) and pending trademark applications for FORTIS, HeatWave, Paradigm and HeatSurround. Generally a patent has a life of seventeen (17) to twenty (20) years.  Since inception, the Debtor has financed its cash flow requirements through issuances of debt and common stock and cash generated from its limited operations.  As it has continued its business

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

19

activities, the Debtor has continued to experience negative cash flow from operations

pending receipt of significant revenues that generate a positive sales margins and cash

flows.  Commencing in the first quarter of 2007, and continuing throughout the fourth

quarter of 2009, all of the Debtor's cash needs were met through loans advanced to the

Company by certain of its directors, as well as private placements of common stock to

third-parties.  SKYE has only recently begun to recognize meaningful sales revenues

from the sale of product.  While reasonable sales margins are being achieved, cash flow

from operations are not anticipated to achieve levels sufficient to fund continuing

business operations under the business plan and Plan of SKYE; and, in the short term,

until those levels have been fully obtained, SKYE will continue to fund current operations

from the issuances of common stock, debt and private placements to accredited

investors.

C.    Events Precipitating Bankruptcy Filing

As set forth above, Debtor filed a Voluntary Petition for Chapter 11 relief on

December 16, 2009, as existing capital and anticipated funds from operations were not

sufficient to sustain immediate Company operations or the proposed Business Plan over

the next twelve (12) months.  The Debtor had substantial increases in its cash

requirements which required additional capital generated from the sale of common

stock, the sale of preferred stock, and/or debt financing.  Recent global events, as well

as domestic economic factors, limited the Debtor as well as other competitors to both

debt and equity financings.  However, the contraction of available capital in the public

markets was particularly apparent in the micro-cap public companies market as private

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

20

equity and hedge fund managers tended to avoid investments in small public companies such as the Debtor.

D.    Debtor's Business Plan

What follows is a brief description of the Debtor's business and future business plans.  Further details about the Debtor's business and financial statements are available to the public through the facilities of the U.S. Securities and Exchange Commission website at: www.sec.gov .  Further details relating to the Debtor's financial condition and post-confirmation operation of the Debtor's business are found in sections X, XI, XII, XIV and XV.

Pursuant to this Plan, the Debtor intends to continue to operate its business in the normal course under its current financial model as the Debtor now has established an expanded wholesale distribution network, and it continues to develop a robust internet marketing initiative designed to provide information to the public about SKYE's products. Debtor also believes there will be a continued trend towards increased sales as the Company expects increased sales through its expanded and increasingly well-staffed wholesale channel efforts, as well as significant efforts to improve the internet as a means of distributing both product information and sales information to prospective buyers.  The Debtor has also recently received the Intertek Safety Certification to both UL and CSA standards of both its HeatWave and Paradigm product lines.  The Debtor has commenced sales of the HeatWave line and expects to commence sales of the Paradigm at some point during the second quarter of 2010 once production volumes of product become available during this period.  Additionally, with a full suite of energy saving appliances, the Debtor is now positioned to capitalize on growing interest and

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

21

demand for tankless water heaters as part of the "green" movement. With the recent introduction of Federal "HomeStar" Legislation, if passed into law, the Debtor expects increased sales because consumers will receive Federal rebates for purchasing and installing all of SKYE's products at or below the 25KW size. Additionally, SKYE is working with its industry partners to also be included in the proposed "BuildingStar" Federal rebate program targeted at commercial and industrial consumers.  If passed, Federal rebates will be available to commercial buyers of SKYE's products.  Given the recent improvements in the new home construction and housing market, the Debtor is increasingly confident that a rebound in the construction sector will benefit the Debtor over the ensuing years as a larger market for the Debtor's products will likely develop. All of these developments have positioned the Debtor to fund its Plan through operations going forward.

## VIII.    CRITICAL PLAN PROVISIONS

Revenues from Debtor's on-going sales will permit Class 5 allowed General Unsecured Claim holders to expect to receive payments pursuant to one of the four alternatives that allowed General Unsecured Claimholders are permitted to elect from, as set forth in Section IX Class 5 General Unsecured Claims below, which alternatives include payment of fifty percent (50%) of the allowed claim with interest thereon at the rate of 4.25%, payable in quarterly payments over eighteen (18) months, or the election to receive a lump sum payment of twenty-five percent (25%) of the allowed claim, or a conversion of (100%) of the allowed claim into common stock, or a conversion of (100%) of the allowed claim into Class "A" ten percent (10%) convertible, redeemable preferred stock as set forth more specifically in Section IX below.   In addition, revenue from

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

22

proceeds of the court approved Debtor-in-Possession loan financing may be used in limited circumstances for payment of pre-petition claims if pre-approved in writing by the Lender under the Debtor-in-Possession Financing Agreement, Summit Growth Management, LLC, and pursuant to Bankruptcy Court order.  Debtor's cash flow will be improved and its revenues otherwise increased as a result of its receipt of Debtor-in-Possession loan financing, which proceeds are otherwise required to be dedicated towards operating costs of the Debtor.

## IX.    DESCRIPTION AND TREATMENT OF CLAIMS

### A.    Overview of Plan Payments

Below is a summary of who gets paid what and when and from what source.  The source of payment in this case is the net revenue available from regular business operations, coupled with business expense reductions, expected increases in business revenues, and proceeds from outside financings.

Below is a detailed description of and explanation of the treatment of claims.

**UNCLASSIFIED CLAIMS:**

**ADMINISTRATIVE CLAIMS:**  All costs and expenses of administration in this case, including any actual and necessary expenses of preserving or liquidating the assets of the Debtor's estate, all allowances, including professional fees and costs, approved by the Court, and any other costs and expenses entitled to priority pursuant to 11 U.S.C. § 507(a)(1) of the Bankruptcy Code and 28 U.S.C. §1930, shall be paid in full on or before the Effective Date of the Plan, unless otherwise agreed by the holders of the claims.  The holders of these claims include the attorneys for the Debtor and all fees

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

23

to be paid to the Office of the United States Trustee.  The estimated administrative expenses for the Debtor's reorganization proceeding are $159,900.00 and consist of:

$ 10,400.00    Debtor shall continue to timely pay quarterly fees owing to the U.S. Trustee's Office post-confirmation, until such time as the case is closed, converted or dismissed, pursuant to 28 U.S.C. §1930(a)(6).  Said quarterly fees shall be based upon all disbursements made by the Revested Debtor under the Plan and in the ordinary course of Debtor's business;

$100,000.00    Estimated professional fees for the Debtor's general bankruptcy attorney Stephen R. Harris, Esq., and Chris D. Nichols, Esq., of BELDING, HARRIS & PETRONI, LTD., calculated as of the date of confirmation;

$ 8,500.00    Estimated professional fees for the Debtor's special purpose Patent attorney Robert A. Parsons, Esq., of PARSONS & GOULTRY, calculated as of the date of confirmation;

$ 18,000.00    Estimated professional fees for the Debtor's special purpose securities attorney Fay M. Matsukage, Esq., of DILL, DILL, CARR, STONBRAKER & HUTCHINGS, calculated as of the date of confirmation;

$ 16,000.00    Estimated professional fees for the Debtor's special purpose accountant Matt McReynolds, of MANTYLA MCREYNOLDS, calculated as of the date of confirmation;and

$ 7,000.00    Older than 30-days post-petition accounts payable [all post-petition administrative expenses are expected to be paid in full in the normal course of business prior to confirmation, including post-petition IRS obligations].

Professional fees, both legal and accounting, shall continue to accrue up through and subsequent to the Confirmation Date, with final amounts owing Pre-Confirmation Date subject to Court approval.

Further, the Debtor is obligated to submit quarterly operating reports post-confirmation, in order to provide a basis for assessing Debtor's post-confirmation

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

24

quarterly fees and to determine whether or not the Debtor is in compliance with a confirmed Plan of Reorganization.

**PRIORITY TAX CLAIMS**:  The Debtor, SKYE INTERNATIONAL, INC.'S priority tax claims are as follows:

| Name | Scheduled Amount | Proof of Claim Amount | Allowed Priority Amount |
|---|---|---|---|
| ARIZONA DEPARTMENT OF REVENUE – PAYROLL TAXES | $401.05 | $0.00 | $0.00 |
| CITY OF SCOTTSDALE – CITY BUSINESS LICENSE | $75.00 | $0.00 | $0.00 |
| UNITED STATES TREASURY – PAYROLL TAXES | $2,361.84 | $336.00 | $0.00 |
| **Total:** [1] | **$2,837.89** | **$336.00** | **0.00** |

Pursuant to the Debtor's Plan, the treatment and disposition of the unclassified priority tax claims will be as follows: Any claim discrepancy will be resolved by the claim objection process, with the stipulated amount and/or Court decreed amount owing used to calculate that particular creditors' allowed claim being paid by the Debtor.   All unclassified priority tax creditors shall be paid 100% of their allowed claim amount, with statutory interest thereon, from business revenues generated in the ordinary course of business, on or before the Effective Date of the Plan.  In the event the Debtor fails to make the payments as set forth hereinabove, the allowed priority tax creditors shall have the right to proceed with any administrative remedies available to them, fifteen (15) days

---

[1]  All scheduled priority tax claims were paid in Debtor's ordinary course of operations and no amounts are currently due and owing, other than in the normal course of operations.

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600