after written notice of default has been given to the Debtor and its attorneys, Stephen R. Harris, Esq., and Chris D. Nichols, Esq.

**CLASSIFIED CLAIMS**:

**CLASS 1:    SECURED CLAIM OF SUMMIT GROWTH MANAGEMENT:** Class 1 consists of the allowed secured claim of SUMMIT GROWTH MANAGEMENT, LLC with an approximate principal balance, accrued interest and miscellaneous fees of $505,944.39 (estimated), as of the date of the Final Order Authorizing Debtor to Obtain Debtor-in-Possession Financing Under 11 U.S.C. §§105 and 364(c) and FRBP 4001(c), namely March 2, 2010. Under the terms of the Final Order Authorizing Debtor to Obtain Debtor-in-Possession Financing the Debtor received an additional $500,000 of principal on March 11, 2010, for a total of $1,005,944.39 (estimated) as the approximate balance due and owing for principal and accrued interest and miscellaneous as of that date. Debtor is also entitled to draw up to an additional $1,000,000.00 of principal balance after the confirmation of this Plan for a total of $2,000,000.00 in principal under the Debtor-in-Possession loan facility. This claim is secured by all of the real and personal property of the Debtor.  The Class 1 secured claim of SUMMIT GROWTH MANAGEMENT, LLC shall continue to be paid by the Debtor, pursuant to the parties' original contractual agreement with no modification thereon.  Accordingly, the Class 1 secured claim of SUMMIT GROWTH MANAGEMENT, LLC is <u>unimpaired</u> under the Plan.

**CLASS 2:    SECURED CLAIM OF THADDEUS MAREK:** Class 2 consists of the allowed secured claim of THADDEUS MAREK with an approximate principal balance and accrued interest of $169,585.86, as of the December 16, 2009, Petition

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

Date. This claim is secured by all the real and personal property of the Debtor but is subordinate under the terms of the Final Order Authorizing Debtor to Obtain Debtor-in-Possession Financing, to the secured interests of, and the secured debt owed to, Summit Growth Management, LLC. Thaddeus Marek shall continue to be paid by the Debtor pursuant to the parties original contractual agreements as subsequently modified by the Debtor, in the DEBTOR-IN-POSSESSION INTERIM FINANCING AND POST-CONFIRMATION FUNDING AGREEMENT, as approved by the Bankruptcy Court, with no other modifications thereon. Accordingly, the Class 2 secured claim of THADDEUS MAREK is impaired under the Plan.

**CLASS 3:** **SECURED CLAIM OF PERRY & ROSARIO LOGAN:** Class 3 consists of the allowed secured claim of PERRY & ROSARIO LOGAN with an approximate principal balance and accrued interest of $399,216.04 as of the December 16, 2009, Petition Date. This claim is secured by all of the real and personal property of the Debtor but is subordinate, under the terms of the Final Order Authorizing Debtor to Obtain Debtor-in-Possession Financing, to the secured interests of, and the secured debt owed to, Summit Growth Management, LLC. Perry and Rosario Logan shall continue to be paid by the Debtor pursuant to the parties original contractual agreements as subsequently modified by the Debtor, in the DEBTOR-IN-POSSESSION INTERIM FINANCING AND POST-CONFIRMATION FUNDING AGREEMENT, as approved by the Bankruptcy Court, with no other modifications thereon. Accordingly, the Class 3 secured claim of PERRY & ROSARIO LOGAN is impaired under the Plan.

///

///

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

27

**CLASS 4:    SECURED CLAIM OF TOYOTA FINANCIAL SERVICES:**  Class 4 consists of the allowed secured claim of TOYOTA FINANCIAL SERVICES with an approximate principal balance and accrued interest of $8,529.65 as of the December 16, 2009, Petition Date.  This claim is secured by a security interest in a 2009 Toyota Corrolla which serves as a company car.  The Class 4 secured claim of TOYOTA FINANCIAL SERVICES shall be paid by the Debtor according to the parties' original contractual agreement with no modifications thereon.  Accordingly, the Class 4 secured claim of TOYOTA FINANCIAL SERVICES is <u>unimpaired</u> under the Plan.

**CLASS 5:    GENERAL UNSECURED CLAIMS:**  The Class 5 claims of SKYE INTERNATIONAL, INC.'s general unsecured creditors are listed as follows:

| Claimant | Scheduled Amount | Proof of Claim Amount | Allowed Amount |
|---|---|---|---|
| ACOM TECHNOLOGIES, INC. | $130.00 | | $130.00 |
| AHRI[2] | $2,500.00 | | $0.00 |
| ALLIANCE DIRECT BANK | $1,014.87 | | 0 |
| ALPHA TECH[3] | $4,471.00 | | $0.00 |
| ASSOCIATED GLOBAL SYSTEMS | $3,711.68 | $4,147.00 | $3,711.68 |
| BRACEWELL & GUILLIANI LLP | $1,027.46 | | $1,027.46 |
| BROADRIDGE | $349.04 | $349.04 | $0.00 |
| CAMERAWERKS.NET | $303.24 | $303.24 | $303.24 |
| CANYON PIPE & SUPPLY | $7,717.50 | | $7,717.50 |
| CHRISTOPHER SKELLY | $0.00 | $3,125.00 | $0.00 (Disputed) |
| COLORADO CASUALTY | $1,267.84 | | 0 |

[2] Paid post-petition claim improperly scheduled as unpaid pre-petition claim.
[3] Critical Vendor-paid pre-confirmation per Order 02/23/10.

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

28

| Claimant | Scheduled Amount | Proof of Claim Amount | Allowed Amount |
|---|---|---|---|
| COMPUTERSHARE | $805.13 | | $0.00(Waived) |
| CREXENDO BUSINESS SOLUTIONS | $1,619.70 | | $1,619.70 |
| CUSTOM PACKAGING PRODUCTS[4] | $2,121.20 | | $0.00 |
| DILL, DILL, CARR, STONBRAKER & HUTCHINGS[5] | $8,691.00 | $8,691.00 | $8,961.00 |
| DONALD RICHEY | $0.00 | $20,300.00 | $0.00 (Disputed) |
| ELECTROSEM[6] | $136,671.64 | $136,671.64 | $0.00 |
| FEDERAL EXPRESS | $152.47 | | $152.47 |
| GALBUT & GALBUT[7] | $82,289.73 | $98,754.00 | $98,754.00 |
| HIGHLAND BUSINESS SVC | $2,610.00 | | $2,610.00 |
| IAPMO | $425.00 | | $425.00 |
| INTERTEK TESTING SERVICES[8] | $13,700.00 | $13,450.00 | $0.00 |
| J&J CONSULTING | $1,987.50 | | $0.00 |
| KUTAK ROCK | $13,368.07 | $13,715.49 | $1.00 (Disputed) |
| LERCH & DEPRIMA | $4,125.30 | $4,125.30 | $1.00 (Disputed) |
| MANTYLA MCREYNOLDS, LLC[9] | $11,000.00 | | $0.00 (Waived) |
| MCROBBIE GROUP | $2,340.70 | | $2,340.70 |
| MOORE SUPPLY CO | $3,375.00 | | $0.00 |
| NETWORK DOGS | $1,890.62 | $2,345.00 | $1,890.62 |

---

[4] Critical Vendor-paid pre-confirmation per Order entered 02/23/10
[5] Special Purpose Attorneys – SEC Counsel
[6] Critical Vendor-paid pre-confirmation per Order entered 12/23/09
[7] Disputed on Schedule F but Accepted  Proof of Claim
[8] Critical Vendor-paid pre-confirmation per Order entered 02/23/10
[9] Special Purpose Auditor/Accountant – prepetition waived

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

| Claimant | Scheduled Amount | Proof of Claim Amount | Allowed Amount |
|---|---|---|---|
| O'CONNOR & CAMPBELL | $47,148.33 | $86,768.31 | $1.00 (Disputed) |
| OGLETREE, DEAKINS, NASH, MOAK & STEWART | $33,951.68 | $33,851.68 | $1.00 (Disputed) |
| PAETEC | $538.49 | | $312.68 |
| PARSONS & GOULTRY[10] | $11,978.00 | | $11,138.00 |
| PERRY LOGAN[11] | $13,526.87 | | $13,734.14 |
| SMARDEN PLUMBING SUPPLY | $1,225.00 | | $1,225.00 |
| SNELL & WILMER | $6,136.95 | | $1.00 (Disputed) |
| STEVE MIHAYLO[12] | $106,476.39 | $106,476.39 | $26,645.83 |
| STEVEN G. MIHAYLO TRUST[13] | $1,650,451.39 | $1,650,451.39 | $1,694,618.06 |
| STUDIO ONE ENTERTAINMENT | $225,742.52 | $225,542.75 | $230,159.19 |
| STUDIO ONE ENTERTAINMENT | $0.00 | $34,342.19 | $18,975.22 |
| STUDNICKY & ASSOCIATES | $85.75 | | $85.75 |
| SUNDANCE FINANCIAL CORP | $118,673.87 | $118,768.00 | $118,861.16 |
| SUNDANCE FINANCIAL CORP | $0.00 | $437,237.19 | $0.00 (Disputed) |
| TED MAREK[14] | $11,982.94 | | $10,873.41 |
| THE MAN CAN[15] | $4,806.40 | | $0.00 |
| THE ROEMER AGENCY | $171.50 | | $171.50 |
| THE SOCHA COMPANY | $624.05 | | $624.05 |
| THE WEINTRAUB GROUP | $36,452.75 | | $26,452.75 |

[10] Special Purpose Attorneys – Patent Counsel
[11] Creditor has provided notice to Debtor that it elects treatment of its allowed general unsecured claim to be paid pursuant to Alternative Four, set forth below.
[12] Creditor has provided notice to Debtor that it elects treatment of its allowed general unsecured claim to be paid pursuant to Alternative Four, set forth below.
[13] Creditor has provided notice to Debtor that it elects treatment of its allowed general unsecured claim to be paid pursuant to Alternative Four, set forth below.
[14] Creditor has provided notice to Debtor that it elect treatment of its allowed general unsecured claims to be paid pursuant to Alternative Four, set forth below.
[15] Critical Vendor-paid pre-confirmation per Order entered 02/23/10

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

30

| Claimant | Scheduled Amount | Proof of Claim Amount | Allowed Amount |
|---|---|---|---|
| TOEL CPA, PC | $950.00 | | $950.00 |
| TRUHEAT[16] | $3963.40 | | $0.00 |
| | | | |
| Total: | $2,578,415.02 | $2,999,414.00 | $2,284,475.11 |

Pursuant to the Debtor's Plan, the treatment and disposition of the Class 5 allowed claims of the general unsecured creditors will be as follows:  Any claim discrepancy will be resolved by the claim objection process, with the stipulated amount and/or Court decreed amount owing used to calculate that particular Class 5 creditors' payments being paid by the Debtor.  Class 5 Unsecured Claim holders shall have the choice of electing, in writing, one of the following five alternatives for payment in full satisfaction of their unsecured claims:

1.    **Alternative One**.  Class 5 unsecured claims shall be paid fifty percent (50%)  of their allowed claims, with five percent (5.00%) interest accrued thereon, from the Effective Date, until paid, and will be paid from ongoing business revenues received by the Debtor within eighteen (18) months, or less, from the Effective Date.  The Class 5 allowed claims shall be paid on a pro-rata basis from a maximum of six (6) equal quarterly installments commencing three (3) months after the Confirmation Date, and continuing every three (3) months thereafter for a maximum of eighteen (18) months and  for a maximum total of six (6) equal quarterly installments, at which time any remaining unpaid balance shall be discharged pursuant to the provisions of the Bankruptcy Code and this Plan.

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

31

In the event the total sum of the allowed Class 5 claims changes due to the claim objection process or withdrawal of a claim, the quarterly installments due to the Class 5 creditors shall be modified so that fifty percent (50%) of the new total is divided in six (6) equal quarterly installments to arrive at the new installment payment. The Debtor may elect to accelerate the payment to less than six (6) quarterly installments so long as fifty percent (50%) of the allowed claims with accrued interest as stated herein, are paid.

2.    **Alternative Two**. Class 5 unsecured claims shall receive twenty-five percent (25%) of their allowed claims, with zero percent (0%) interest accrued thereon, from the Effective Date, to be paid in full within sixty (60) days of the Effective Date.

3.    **Alternative Three**. Class 5 unsecured claims shall convert up to 100% of their pro rata allowed claims, with five (5%) percent interest accrued thereon from the Effective Date, into free-trading common stock of the Debtor at twenty-five cents per share ($0.25), said conversion to occur within thirty (30) days of the Effective Date.

4.    **Alternative Four.** Class 5 unsecured claims shall convert up to 100% of their pro rata allowed claims, with five percent (5%) interest accrued thereon from the Effective Date, into class "A" ten percent (10.0%) convertible redeemable preferred stock (the "class "A" preferred share") of the Debtor at a conversion price of one dollar ($1.00) per class "A" preferred share, said conversion to occur within thirty (30) days of the Effective Date. Each class "A"

---

[16] Critical Vendor-paid pre-confirmation per Order entered 02/23/10

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

preferred share shall offer ten percent (10.0%) simple interest which shall be calculated from and after the Effective Date and shall be paid annually by the Debtor commencing on or about twelve (12) months from and after the Effective Date. Each class "A" preferred share may be converted at any time and from time to time at the option of the holder into common shares of the debtor. The number of shares of common stock issuable to the holder upon conversion shall be determined by dividing the one dollar ($1.00) value of the class "A" preferred share and dividing it by such number resulting from the application of a twenty percent (20%) discount to the ten-day moving average of the debtor's common stock on the date the request for conversion is received by the debtor; provided that  the minimum conversion price shall not be lower than twenty-five cents ($0.25) per share. For example, if the Debtor's shares are trading at fifty cents ($0.50) per share on the date the debtor receives the request for conversion, the class "A" preferred holder will be entitled to convert the one dollar ($1.00) face value of each class "A" preferred share at the rate of forty cents $0.40 per common share or two and one-half (2.5) common shares per class "A" preferred share  All class "A" preferred shares shall automatically convert into common shares of the Debtor at the aforesaid  conversion rate on June 30, 2015.  At any time and from time to time the Debtor may call all outstanding class "A" preferred shares for redemption at which time the holder will be paid one dollar ($1.00) per class "A" preferred share delivered to the Debtor for redemption.

///

///

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

5.    **Alternative Five.**  Allowed Class 5 unsecured claims shall each be entitled to select either Alternative one or Alternative two and receive a cash repayment as provided above.  Allowed Class 5 unsecured claims shall also be entitled to select either or both of Alternatives 3 and 4 above and allocate the portion of the claimholder's allowed claims to be applied to each selected Alternative.  For example, an allowed claim of $10,000 could be divided into either of Alternative one (resulting in a cash payment of $5,000 over six installments payable over an 18 month period or Alternative two (resulting in a cash payment of $2,500 within 60 days from notice to the Debtor); or the class 5 unsecured claim can also be divided in any amount between Alternative three and four and thus the claimholder may elect to receive a prorata amount of Debtor's common shares (Alternative three) and the Debtor's class "A" preferred shares (Alternative four).  An allowed claim that is elected by the claimholder to be divided between two Alternatives, shall be in writing, designating the allocation amount of the allowed claims as to each selected Alternative.

Allowed classified unsecured claim holders shall exercise one of the five options by written notification to the Debtor within twenty (20) days after the Effective Date. Accordingly, the Class 5 allowed unsecured claims estimated at $2,286,975.11, are impaired under the Debtor's Plan.

**CLASS 6:**    **EQUITY CLAIMS:**  Pursuant to this Plan, the Class 6 Equity Interests include all instruments evidencing an ownership interest in the Debtor as of the Effective Date.  The Class 6 Equity Interests in the Debtor shall not be modified. Accordingly, the Class 6 interests of the Debtor are impaired under the Debtor's Plan.

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

34

**CLASS 7:    STOCK OPTION CLAIMS:** Class 7 consists of stock options and contractual rights to acquire ownership interest in the Debtor, whether or not transferable, all as of the Effective Date. The Class 7 Stock Option Claims in the Debtor shall not be modified. Accordingly, the Class 7 interests of the Debtor are <u>impaired</u> under the Debtor's Plan.

**X.    SOURCE OF MONEY TO PAY CLAIMS AND INTEREST-HOLDERS**

Assuming the Debtor is able to generate the revenues it estimates and have net income equal to or greater than that of the last six (6) months, in addition to revenues generated through equity offerings and placements, and the improvement of Debtor's cash flow as a result of the Court approved Debtor-in-Possession financing funds which are dedicated to the payment of Debtor's operating costs, it is anticipated there will be increased cash flow for the Debtor's payment of allowed claims and interest-holders. Notwithstanding the foregoing, no Debtor-in-Possession financing is to be used for payment of pre-petition claims without the express advance written approval of the Debtor-in-Possession lender, Summit Growth Management, LLC, and the Bankruptcy Court, pursuant to the terms of the DEBTOR-IN-POSSESSION INTERIM FINANCING AND POST-CONFIRMATION FUNDING AGREEMENT, previously approved by the Bankruptcy Court. Accordingly, based upon the sources of funding as set forth herein, this proposed Plan is feasible under 11 U.S.C. §1129(a)(11), as is supported by the Exhibits attached hereto. Attached as **Exhibits "A" and "B"** are budgets and monthly cash flow projections for the first twelve (12) and for twenty-four (24) months of the Plan, respectively, reflecting that net cash flow is available to the Debtor to make all Plan payments.

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

35

More detailed information regarding the Debtor's ongoing business revenues and expenses can be found in the Debtor's Monthly Operating Reports on file with this Court.

## XI.    ASSETS AND LIABILITIES OF THE ESTATE

### A.    Assets

The identity and fair market value of the estate's assets as of the Petition date are listed in the Debtor's Schedule of Assets and Liabilities and Statement of Financial Affairs on file with the Court.  These documents should be reviewed by the reader to assess what assets are, at least theoretically, available to satisfy claims and to evaluate the overall worth of the bankruptcy estate.

### B.    Liabilities

Classes 1 through 7 represent all liabilities of the Debtors as of the Petition Date.

### C.    Summary

Except as provided in this Plan, and subject to Bankruptcy Court approval, the Debtor intends to continue operating its business in the normal course as outlined above.  Additionally, Debtor will take the necessary steps to continue its organization efforts by aggressively marketing and promoting its products both through wholesale and internet channels to generate additional revenues.

The value of the assets in an orderly liquidation is believed to be approximately $1,049,092.24 or less, although in a forced liquidation the Debtor estimates that the fair market value of the assets would not be realized, resulting in significant reduction in asset values.  The total allowed liabilities are in excess of $3,889,789.73.

///

///

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

## XII.    TREATMENT OF NONCONSENTING CLASSES

As stated above, even if all classes do not consent to the proposed treatment of their claims under the Plan, the Plan may nonetheless be confirmed if the dissenting classes are treated in a manner prescribed by the Code. The process by which dissenting classes are forced to abide by the terms of a Plan is commonly referred to as "cramdown". The Code allows dissenting classes to be crammed down if the Plan does not "discriminate unfairly" and is "fair and equitable". The Code does not define discrimination, but it does provide a minimum definition of "fair and equitable". The term can mean that <u>secured</u> claimants retain their liens and receive cash payments whose present value equals the value of their security interest. For example, if a creditor lends the Debtor $100,000 and obtains a security interest in property that is worth only $80,000, the "fair and equitable" requirement means that the claimant is entitled to cash payments whose present value equals $80,000 and not $100,000. The term means that <u>unsecured</u> claimants whose claims are not fully satisfied at least know that no claim or interest that is junior to their will receive anything under the Plan.

Therefore, if a class of general unsecured claims votes against the Plan, the Plan cannot be confirmed where the debtor or a class of interest holders (e.g. shareholders or partners) will receive or retain any property under the Plan, unless the Plan provides that the class of general unsecured claims shall be paid in full with interest. Similarly, if a class of interest holders votes against the Plan, the Plan cannot be confirmed where the debtor will receive or retain any property under the Plan, unless the Plan provides that the class of interest holders shall be paid in full with interest. These are complex

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

statutory provisions and the preceding paragraphs do not purport to state or explain all of them.

## XIII.    TREATMENT OF NONCONSENTING MEMBERS OF CONSENTING CLASS (CHAPTER 7 LIQUIDATION ANALYSIS)

The Plan must provide that a non-consenting impaired claimant or interest holder of a consenting class receive at least as much as would be available had the Debtor filed a Chapter 7 petition instead.

In a Chapter 7 case, the general rule is that the Debtor' assets are sold by a trustee. Unsecured creditors share in the proceeds of sale only after secured creditors and administrative claimants are paid.  Certain unsecured creditors get paid before other unsecured creditors do.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the total amount of allowed claims.

A creditor would recover from the assets of the bankruptcy estate less under Chapter 7 than under Chapter 11 for two reasons.  First, a forced liquidation value of the Debtor's assets, consisting of quickly depreciating vehicles and personal property, is estimated at $1,049,092.24 or less, and are encumbered by secured liabilities of approximately, $1,607,331.55.  Thus, in a Chapter 7 proceeding, unsecured and priority creditors would not receive any payment.  Second, in a Chapter 7 case a trustee is appointed and is entitled to compensation from the bankruptcy estate in an amount no more than 25% of the first $5,000 of all money disbursed, 10% on any amount over $5,000 but less than $1,000,000, 5% on all amounts over $1,000,000 but less than $3,000,000, and reasonable compensation not to exceed 3% on any amount over $3,000,000, thus diminishing monies available for payment to unsecured creditors.

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

38

Accordingly, any payments made to unsecured creditors under this Plan would be more than what would be received by them in a Chapter 7 proceeding.

## XIV. FUTURE DEBTOR

### A. Management of Debtor

The Debtor shall continue to operate its business in the normal course with its current management in place at the current monthly salary for key management as follows:

1. Perry Logan, Chairman, President and Chief Executive Officer - $10,000 per month (up to 50% of which shall be paid in the Debtor's common shares at $0.25 per share) at the election of the Debtor.

2. Thaddeus Marek, Chief Financial Officer - $10,000 per month (up to 50% of which shall be paid in the Debtor's common shares at $0.25 per share) at the election of the Debtor.

3. L. Fred Huggins, Jr., VP Sales & Marketing - $8,333.33 per month

4. David Allen, VP Engineering - $6,250 per month

### B. Debtor acting as Disbursing Agent

The Debtor shall be responsible for making the payments contemplated in the Plan, collecting money intended for distribution to claimants, and transmitting it to them.

### C. Future Financial Outlook

The Debtor shall continue to operate its business in the ordinary course.

## XV. SALE OF PROPERTY; ASSUMPTION OF CONTRACTS AND LEASES; OTHER PROVISIONS

The Plan provides that the Debtor will not sell any of its assets, other than in the ordinary course of business. All executory contracts and unexpired leases set forth in

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

Classes 1 through 7, and all other executory contracts will be assumed by order of the Bankruptcy Court.

**XVI.    BANKRUPTCY PROCEEDINGS**

The following proceedings have occurred since the Filing Date: Filing of various administrative motions and motions for interim and final debtor-in-possession financing.

**XVII.    TAX CONSEQUENCES OF PLAN**

The Debtor does not believe that the Plan has any tax consequences for the Debtor.

PERSONS CONCERNED WITH THE TAX CONSEQUENCES OF THIS PLAN SHOULD CONSULT THEIR OWN ACCOUNTANTS, ATTORNEYS AND/OR ADVISORS.  THE DEBTOR MAKE THE AFOREMENTIONED DISCLOSURE OF POSSIBLE TAX CONSEQUENCES FOR THE SOLE PURPOSE OF ALERTING READERS OF TAX ISSUES THEY MAY WISH TO CONSIDER.  THE DEBTOR CANNOT AND DOES NOT REPRESENT THAT THE TAX CONSEQUENCES MENTIONED ABOVE ARE COMPLETELY ACCURATE BECAUSE THE TAX LAW EMBODIES MANY COMPLICATED RULES, WHICH MAKE IT DIFFICULT TO ACCURATELY STATE WHAT THE TAX IMPLICATIONS OF ANY ACTION MIGHT BE.

**XVIII.  EFFECT OF CONFIRMATION OF PLAN**

A.    General Comments

The provisions of a confirmed Plan bind the Debtor, any entity acquiring property under the Plan, and any creditor, interest holder, or general partner of the Debtor, even those who do not vote to accept the Plan.

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

40

The confirmation of the Plan vests all property of the estate in the Debtor. The automatic stay is lifted upon confirmation as to property of the estate. The order of confirmation will prohibit collection or enforcement of pre-petition claims against the Debtor or the Debtor's property until, and if, there is a default in the provisions of the Debtor's property and if there is a default in the provisions of the DEBTOR'S FIRST AMENDED DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION that goes uncured for a period of thirty (30) days.

B.     Discharge of liability

Debtor is seeking to receive a discharge pursuant to Code Section 1141(d). Debtor is paying its allowed creditors' claims in full or  paying interest on said claims, therefore, the Debtor is requesting a discharge pursuant to 11 U.S.C. §1141.

·     C.     Modification of the Plan

The Debtor may modify the Plan at any time before confirmation. Further, Debtor may modify the Plan after notice and hearing at any time after confirmation and before substantial consummation, but only if circumstances warrant.

D.     Post-Confirmation Causes of Action

To the best knowledge of the Debtor, there are no causes of action existing in this case.

E.     Final Decree

Once the Plan has been consummated, a final decree may be entered upon motion of the Debtor. The effect of the final decree is to close the bankruptcy case. After such closure, a party seeking any type of relief relating to a Plan provision may seek such relief in a state court of general jurisdiction.

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

41

## XIX.    RETENTION OF JURISDICTION

Notwithstanding confirmation of this Plan, the Court will retain jurisdiction for the following purposes, and each of them:

A.    The Court will retain jurisdiction to determine the allowability and payment of any claim(s) upon any objection(s) thereto (or other appropriate proceedings) by the Debtor or by any other party in interest entitled to proceed in that manner.  As part of such retained jurisdiction, the Court will continue to determine the allowability of Administrative Claims and any request(s) for payment(s) thereof, including professional fees and costs which are Administrative Claims.

B.    The Court will retain jurisdiction to determine any dispute(s) which may arise regarding the interpretation of any provision(s) of this Plan.

C.    The Court will retain jurisdiction to facilitate the consummation of this Plan by entering, consistent with the provisions of this Plan, any further necessary or appropriate order(s) regarding the enforcement of this Plan and any provision(s) thereof.

D.    The Court will retain jurisdiction to adjudicate any cause(s) of action or other proceeding(s) presently pending or otherwise referenced here or elsewhere in this Plan, including, but not limited to, the adjudication of any and all "core proceedings" under 28 U.S.C. § 157(b), which may be pertinent to this Reorganization Case, and which the Debtors may deem it appropriate to initiate and prosecute in aid of its reorganization, and any "non-core proceedings" accepted for consideration by this Court.

E.    The Court will retain jurisdiction to enter an appropriate final decree in this Reorganization Case.

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

42

**WHEREFORE**, SKYE INTERNATIONAL, INC., a Nevada corporation, as proponent of this Plan, requests confirmation of this Plan pursuant to §§1129(a) and 1129(b) of the Bankruptcy Code.

DATED this 20th of May, 2010.

STEPHEN R. HARRIS, ESQ.
CHRIS D. NICHOLS, ESQ.
BELDING, HARRIS & PETRONI, LTD.
417 W. Plumb Lane
Reno, NV  89509

/s/ Chris D. Nichols, Esq.

_____

Attorney for Debtor

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

43

## V E R I F I C A T I O N

Under penalty of perjury, the undersigned declares that he is Chairman, President, and Chief Executive Officer of SKYE INTERNATIONAL, INC., a Nevada corporation, Debtor in the foregoing bankruptcy matter, I have read the foregoing DEBTOR'S FIRST AMENDED JOINT DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION and knows the contents thereof; that the contents are true of his own knowledge, except as to those matters stated on information and belief, and that as to such matters he believes them to be true.

DATED this 20th of May, 2010.

PERRY D. LOGAN,
Chairman, President and CEO of
SKYE INTERNATIONAL, INC.,
A Nevada corporation

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

44

# EXHIBIT "A"

# EXHIBIT "A"

5/6/2010 1:10 PM

## SKYE INTERNATIONAL 2010 BANKRUPTCY CASH BUDGET

| | | 2010 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | May | June | July | Aug | Sept | Oct | Nov | Dec | TOTAL |
| **A/R RECEIPTS** | 4,806.29 | 19,566.61 | 44,092.97 | 60,268.08 | 77,304.32 | 89,863.48 | 96,807.76 | 93,713.82 | 534,625.59 |
| | | | | | | | | | |
| **PROJECTED EXPENDITURES** | | | | | | | | | |
| Advertising/Promotion | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 45,060.24 |
| Advertising/Promotion - Media | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 13,000.00 |
| Brand Development/Digital Marketing | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 23,000.00 |
| Commissions/Rebates | 3,185.64 | 2,354.59 | 3,189.45 | 4,574.19 | 5,468.08 | 6,450.63 | 7,189.66 | 7,652.38 | 51,092.00 |
| Company Car Financing | 426.47 | 426.47 | 426.47 | 426.47 | 426.47 | 426.47 | 426.47 | 426.47 | 5,117.64 |
| Computer/Internet | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 9,015.24 |
| Computer Fixed Assets | 2,000.00 | 4,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 0.00 | 4,000.00 | 23,534.11 |
| Dues & Subscriptions | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 11,313.52 |
| Engineering/Research/Development | 58,000.00 | 1,549.40 | 2,541.16 | 3,123.74 | 4,323.84 | 4,478.53 | 5,165.90 | 4,558.37 | 95,525.84 |
| Fees - Bank | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 810.00 |
| Fees - Internet Services/Credit Cards | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 759.45 |
| Fees - US Trustee | 0.00 | 4,875.00 | 0.00 | 0.00 | 0.00 | 4,875.00 | 0.00 | 0.00 | 15,275.00 |
| Insurance - Commercial | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 17,124.85 |
| Insurance - D&O | 1,200.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 19,259.48 |
| Insurance - WIC | 260.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 4,001.51 |
| Interest Payments (Marek/Perry) | 4,448.34 | 4,596.61 | 4,448.34 | 4,596.61 | 4,596.61 | 4,448.34 | 4,596.61 | 4,448.34 | 51,860.04 |
| Inventory | 6,200.00 | 8,250.00 | 36,600.00 | 24,750.00 | 23,850.00 | 0.00 | 140,650.00 | 0.00 | 288,350.04 |
| Consultants | 15,500.00 | 15,500.00 | 15,500.00 | 15,500.00 | 15,500.00 | 15,500.00 | 15,500.00 | 15,500.00 | 169,844.00 |
| Miscellaneous Expenses | 158.00 | 232.41 | 381.17 | 485.56 | 648.58 | 671.78 | 774.88 | 683.76 | 5,533.77 |
| Miscellaneous Product Supplies | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 3,697.44 |
| Office Expenses | 475.00 | 464.82 | 762.35 | 937.12 | 1,297.15 | 1,343.56 | 1,549.77 | 1,367.51 | 11,338.05 |
| Payroll | 24,521.33 | 33,209.33 | 43,209.33 | 45,209.33 | 47,209.33 | 49,209.33 | 49,209.33 | 51,497.33 | 441,637.83 |
| Payroll Taxes | 8,475.19 | 11,477.98 | 14,934.23 | 15,625.48 | 16,316.73 | 17,007.98 | 17,007.98 | 17,798.77 | 159,603.17 |
| Benefits | 0.00 | 3,000.00 | 3,300.00 | 3,600.00 | 3,900.00 | 4,200.00 | 4,200.00 | 4,500.00 | 30,114.59 |
| Postage & Courier (non product) | 247.90 | 406.59 | 499.80 | 691.81 | 716.56 | 826.54 | 729.34 | 523.55 | 5,191.55 |
| Product Certification/Annual Renewal | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 8,583.00 |
| Maintenance/Cleaning | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 2,451.47 |
| Professional Fees - Accounting & Auditing | 5,000.00 | 0.00 | 20,000.00 | 3,000.00 | 3,000.00 | 0.00 | 0.00 | 3,500.00 | 47,276.00 |
| Rent | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 44,063.71 |
| Professional Fees - Legal | 30,000.00 | 0.00 | 0.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 131,547.45 |
| Professional Fees - Legal Bankruptcy | 1,550.00 | 4,850.00 | 5,550.00 | 550.00 | 650.00 | 1,650.00 | 550.00 | 550.00 | 20,932.75 |
| Professional Fees - Other Public Company Fees | 2,100.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 54,800.00 |
| Shipping | 1,200.00 | 1,850.00 | 2,890.00 | 3,000.00 | 3,750.00 | 4,050.00 | 4,850.00 | 4,200.00 | 20,768.74 |
| Telecommunications | 2,000.00 | 2,100.00 | 2,200.00 | 2,300.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,450.00 | 28,096.74 |
| Travel/Entertainment/Meals | 4,500.00 | 4,500.00 | 4,700.00 | 4,900.00 | 5,100.00 | 5,300.00 | 5,500.00 | 5,700.00 | 62,728.28 |
| Utilities | 350.00 | 350.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 7,586.77 |
| | | | | | | | | | |
| **TOTAL EXPENSES** | 167,362.87 | 122,743.09 | 190,091.30 | 164,878.32 | 170,698.35 | 161,363.16 | 292,694.94 | 158,381.57 | 1,953,694.86 |
| | | | | | | | | | |
| **PROJECTED CASH SHORTFALL** | (102,556.58) | (103,176.49) | (154,998.33) | (104,610.24) | (93,394.03) | (71,509.68) | (195,887.19) | (64,667.85) | (1,410,069.37) |
| | | | | | | | | | |
| **DIP FINANCING** | | | | | | | | | |
| Payment to Critical Vendors | 500,000.00 | 500,000.00 | | | | | | | 1,265,013.17 |
| Payment to Unsecured Vendors | | | | | (49,375.00) | | | (47,812.50) | (117,533.64) |
| Debt/Equity Financing | | | | | 1,000,000.00 | | | | 1,000,000.00 |
| | | | | | | | | | |
| **NET DIP CASH AVAILABLE** | 0.00 | 500,000.00 | 0.00 | 0.00 | 951,625.00 | 0.00 | 0.00 | (47,812.50) | |
| | | | | | | | | | |
| **CASH BALANCE** | 53,777.07 | 450,600.59 | 295,602.25 | 190,992.01 | 1,048,222.98 | 977,713.30 | 781,826.12 | 669,345.76 | |

# EXHIBIT "B"

# EXHIBIT "B"

**SKYE INTERNATIONAL 2011 BANKRUPTCY CASH BUDGET**

| | Jan | Feb | Mar | Apr | May | June | July | Aug | Sept | Oct | Nov | Dec | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | 2011 | | | | | | | |
| A/R RECEIPTS | 79,571.16 | 90,157.55 | 117,493.39 | 135,944.53 | 171,675.20 | 245,929.98 | 299,882.61 | 304,212.66 | 302,934.74 | 300,883.92 | 298,752.98 | 295,095.13 | 2,642,533.84 |
| | | | | | | | | | | | | | |
| **PROJECTED EXPENDITURES** | | | | | | | | | | | | | |
| Advertising/Promotion | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 54,000.00 |
| Advertising/Promotion - Media | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 18,000.00 |
| Brand Development/Digital Marketing | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 24,000.00 |
| Commissions/Rebates | 6,742.20 | 6,035.71 | 6,557.74 | 7,910.86 | 8,824.19 | 10,592.86 | 14,268.47 | 16,939.13 | 17,153.47 | 17,090.21 | 16,989.69 | 16,883.21 | 145,986.76 |
| Company Car Financing | 426.47 | 426.47 | 426.47 | 426.47 | 426.47 | 426.47 | 426.47 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,985.29 |
| Computer/Internet | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 7,200.00 |
| Computer Fixed Assets | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | | | | | | | | 10,000.00 |
| Dues & Subscriptions | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 7,200.00 |
| Engineering/Research/Development | 3,272.19 | 5,137.18 | 6,261.05 | 6,800.57 | 8,840.61 | 14,407.65 | 15,407.67 | 14,975.34 | 15,296.61 | 14,772.36 | 15,093.53 | 14,511.21 | 134,775.97 |
| Fees - Bank | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 1,200.00 |
| Fees - Internet Services/Credit Cards | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 900.00 |
| Fees - US Trustee | 4,875.00 | | | 4,875.00 | | | 4,875.00 | | | 4,875.00 | | | 19,500.00 |
| Insurance - Commercial | 1,500.00 | 1,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,600.00 | 28,000.00 |
| Insurance - D&O | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 27,500.00 |
| Insurance - WC | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 6,000.00 |
| Interest Payments (Maraxi/Perini) | 4,596.61 | 4,596.61 | 4,448.34 | 4,598.61 | 4,446.34 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 54,886.51 |
| Inventory | 43,050.00 | 38,400.00 | 24,750.00 | 34,050.00 | 207,000.00 | 83,350.00 | 33,000.00 | 381,250.00 | 16,500.00 | 54,500.00 | 304,000.00 | 58,500.00 | 1,259,050.00 |
| Consultants | 15,500.00 | 15,600.00 | 15,600.00 | 15,500.00 | 15,500.00 | 15,500.00 | 15,500.00 | 15,500.00 | 15,500.00 | 15,500.00 | 15,500.00 | 15,500.00 | 186,000.00 |
| Miscellaneous Expenses | 490.83 | 770.58 | 939.16 | 1,020.09 | 1,326.09 | 2,181.13 | 2,311.15 | 2,246.30 | 2,294.49 | 2,215.85 | 2,264.04 | 2,176.68 | 20,216.40 |
| Miscellaneous Product Supplies | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 3,000.00 |
| Office Expenses | 981.66 | 1,541.15 | 1,878.32 | 2,040.17 | 2,652.16 | 4,322.27 | 4,622.30 | 4,492.60 | 4,588.98 | 4,431.71 | 4,528.09 | 4,353.35 | 40,432.79 |
| Payroll | 52,802.25 | 52,802.25 | 55,896.37 | 55,896.37 | 55,896.37 | 60,021.89 | 60,021.89 | 60,021.89 | 60,021.89 | 60,021.89 | 60,021.89 | 62,378.63 | 695,803.52 |
| Payroll Taxes | 18,246.78 | 18,246.78 | 19,319.18 | 19,319.18 | 19,319.18 | 20,745.07 | 20,745.07 | 20,745.07 | 20,745.07 | 20,745.07 | 20,745.07 | 21,559.88 | 240,487.09 |
| Benefits | 4,500.00 | 4,600.00 | 4,600.00 | 5,100.00 | 5,100.00 | 5,400.00 | 5,400.00 | 5,400.00 | 5,400.00 | 5,400.00 | 5,400.00 | 5,700.00 | 62,100.00 |
| Postage & Courier (non product) | 821.95 | 1,001.17 | 1,088.09 | 1,414.50 | 2,305.21 | 2,455.23 | 2,396.05 | 2,447.46 | 2,383.58 | 2,414.98 | 2,321.79 | 2,288.68 | 23,338.29 |
| Product Certification/Annual Renewal | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 8,400.00 |
| Maintenance/Cleaning | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 3,600.00 |
| Professional Fees - Accounting & Auditing | 12,500.00 | 5,000.00 | 5,000.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 4,000.00 | 3,500.00 | 3,500.00 | 32,000.00 |
| Professional Fees - Legal | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 3,500.00 | 42,000.00 |
| Professional Fees - Legal Bankruptcy | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 90,000.00 |
| Professional Fees - Other Public Company Fees | 1,420.05 | 650.00 | 650.00 | 650.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 7,470.05 |
| Rent | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 72,000.00 |
| Shipping | 2,400.00 | 3,900.00 | 5,100.00 | 6,000.00 | 9,000.00 | 12,600.00 | 13,500.00 | 12,150.00 | 11,850.00 | 10,800.00 | 10,000.00 | 9,900.00 | 108,000.00 |
| Telecommunications | 2,450.00 | 2,450.00 | 2,600.00 | 2,500.00 | 2,550.00 | 2,950.00 | 2,550.00 | 2,550.00 | 2,950.00 | 2,950.00 | 2,550.00 | 2,550.00 | 30,250.00 |
| Travel/Entertainment/Meals | 5,800.00 | 6,100.00 | 6,300.00 | 6,500.00 | 6,700.00 | 6,900.00 | 7,100.00 | 7,300.00 | 7,500.00 | 7,700.00 | 7,900.00 | 8,100.00 | 84,000.00 |
| Utilities | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 12,000.00 |
| | | | | | | | | | | | | | |
| **TOTAL EXPENSES** | 213,680.99 | 197,084.50 | 196,939.72 | 212,124.83 | 384,013.85 | 284,717.47 | 245,399.05 | 555,292.79 | 221,039.09 | 266,692.07 | 507,388.21 | 280,077.26 | 3,658,763.42 |
| | | | | | | | | | | | | | |
| **PROJECTED CASH SHORTFALL** | (134,035.84) | (106,926.95) | (79,446.34) | (76,180.29) | (212,338.65) | (38,787.49) | 54,483.53 | (251,080.13) | 81,895.65 | 34,191.85 | (208,635.23) | 27,017.87 | (1,016,229.58) |
| | | | | | | | | | | | | | |
| **DIP FINANCING** | | | | | | | | | | | | | |
| Payment to Critical Vendors | 500,000.00 | | | | | | | | | | | | 500,000.00 |
| Payment to Unsecured Vendors | | | (47,250.00) | | | (46,687.50) | | | (46,125.00) | | | (45,562.50) | (185,625.00) |
| Debt/Equity Financing | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| **NET DIP CASH AVAILABLE** | 500,000.00 | 0.00 | (47,250.00) | 0.00 | 0.00 | (46,687.50) | 0.00 | 0.00 | (46,125.00) | 0.00 | 0.00 | (45,562.50) | 314,375.00 |
| | | | | | | | | | | | | | |
| **CASH BALANCE** | 1,035,309.93 | 928,382.97 | 801,686.64 | 725,506.34 | 513,167.90 | 427,692.91 | 482,176.43 | 221,096.30 | 265,866.95 | 291,058.80 | 82,423.57 | 63,878.94 | |